UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN (DETROIT) DIVISION

MIGHTY GOOD SOLUTIONS, LLC,          )
                                     )
               PLAINTIFF,            )        CASE NO. 2:22-CV-11153-DPH-KGA
                                     )
-V-                                  )
                                     )        HON. DENISE PAGE HOOD
UNIVERSAL GP PRODUCTS, LLC,          )        MAG. HON. ELIZABETH STAFFORD
                                     )
               DEFENDANT.            )

| | |
|---|---|
| MILLER CANFIELD<br>JEFFREY ALAN CRAPKO (P78487)<br>*ATTORNEYS FOR PLAINTIFF*<br>150 W. JEFFERSON AVE STE 2500<br>DETROIT, MI 48226<br>248-267-3237<br>FAX: 248-879-2002<br>CRAPKO@MILLERCANFIELD.COM | WOOD KULL HERSCHFUS OBEE & KULL, PC<br>BRIAN H. HERSCHFUS (P41567)<br>*ATTORNEYS FOR DEFENDANT*<br>37000 GRAND RIVER AVE STE 290<br>FARMINGTON HILLS, MI 48335<br>248-476-2000<br>FAX: 248-476-3660<br>BHH@WOODKULL.COM |
| CARMODY MACDONALD P.C.<br>MEGHAN M. LAMPING (59987MO)<br>BRANDON S. STEIN (73707MO)<br>*ATTORNEYS FOR PLAINTIFF*<br>120 SOUTH CENTRAL AVE STE 1800<br>ST. LOUIS, MISSOURI 63105<br>(314) 854-8600<br>FAX 314-854-8660<br>MML@CARMODYMACDONALD.COM<br>BSS@CARMODYMACDONALD.COM | |

## UNIVERSAL GP PRODUCTS, LLC'S MOTION TO DISMISS

NOW COMES Defendant herein, Universal GP Products, LLC, its attorneys,

Wood Kull Herschfus Obee & Kull, PC, and more specifically Brian H. Herschfus,

and moves this Court for dismissal of Plaintiff's Complaint in its entirety against

this defendant pursuant to Federal Rule of Civil Procedure 12(b)(6) and Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

In accordance with ED Mich LR 7.1(a) and this Court's motion practice guidelines, on September 9, 2022, Defendant's Counsel reached out to Plaintiff's Attorney to discuss this Motion and to seek concurrence. Defendant's Counsel left a voice mail and (i) explained the nature of this motion and its legal basis, and (ii) requested, but did not obtain, concurrence in the relief sought. On Monday, September 12, 2022, Plaintiff's Attorney sent an e mail refusing to agree to the relief and requiring a Response on the date required.

WHEREFORE Universal GP Products, LLC respectfully requests this Court grant its motion and enter an order dismissing Plaintiff's claims and granting any other relief this Court deems appropriate.

Respectfully submitted,
**Wood, Kull, Herschfus, Obee & Kull, P.C.**

By:   */s/ Brian H. Herschfus*
Brian H. Herschfus (P41567)
*Attorneys for Defendant*
37000 Grand River Ave, Ste 290
Farmington Hills, MI 48335-2881
248-476-2000
Dated: September 12, 2022     bhh@woodkull.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN (DETROIT) DIVISION

MIGHTY GOOD SOLUTIONS, LLC,      )
                                 )
              PLAINTIFF,          )        CASE NO. 2:22-CV-11153-DPH-KGA
                                 )
-V-                              )
                                 )        HON. DENISE PAGE HOOD
UNIVERSAL GP PRODUCTS, LLC,       )        MAG. HON. ELIZABETH STAFFORD
                                 )
              DEFENDANT.          )

MILLER CANFIELD
JEFFREY ALAN CRAPKO (P78487)
*ATTORNEYS FOR PLAINTIFF*
150 W. JEFFERSON AVE STE 2500
DETROIT, MI 48226
248-267-3237
FAX: 248-879-2002
CRAPKO@MILLERCANFIELD.COM

CARMODY MACDONALD P.C.
MEGHAN M. LAMPING (59987MO)
BRANDON S. STEIN (73707MO)
*ATTORNEYS FOR PLAINTIFF*
120 SOUTH CENTRAL AVE STE 1800
ST. LOUIS, MISSOURI 63105
(314) 854-8600
FAX 314-854-8660
MML@CARMODYMACDONALD.COM
BSS@CARMODYMACDONALD.COM

WOOD KULL HERSCHFUS OBEE & KULL, PC
BRIAN H. HERSCHFUS (P41567)
*ATTORNEYS FOR DEFENDANT*
37000 GRAND RIVER AVE STE 290
FARMINGTON HILLS, MI 48335
248-476-2000
FAX: 248-476-3660
BHH@WOODKULL.COM

## BRIEF IN SUPPORT OF
## DEFENDANT UNIVERSAL GP PRODUCTS, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................iii

INDEX OF AUTHORITIES................................................................................v

INTRODUCTION.......................................................................................1

STATEMENT OF FACTS...............................................................................1

STANDARD OF REVIEW..............................................................................6

    I.  Federal Rule of Civil Procedure 12(b)(6)...........................................6

    II.  Federal Rule of Civil Procedure 56(c).............................................8

LEGAL ARGUMENT....................................................................................9

    I.  RECISSION:..............................................................................9

    II. ECONOMIC LOSS DOCTRINE:.................................................12

    III.  FRAUD AND MISREPRESENTATION........................................13

    IV.  EXPRESSIONS OF OPINION AND PUFFING/FRAUD....................18

    V. FAILURE TO REJECT THE GOODS AND THEN FAILING TO RETURN THEM.........................................................................................19

        A.  Exercise of Right to Inspect and Acceptance of Goods......................19

        B. Higher Standard for Revocation of Acceptance; Same Rights and Duties as to Goods..........................................................................21

    VI.  BREACH OF CONTRACT AND PAROLE EVIDENCE RULE:.........23

    VII. UNJUST ENRICHMENT:..........................................................24

CONCLUSION AND PRAYER FOR RELIEF:......................................................24

## STATEMENT OF ISSUES PRESENTED

I.  IS THE ESSENCE OF THE PLAINTIFF'S CLAIMS ONE FOR RECISSION EVEN THOUGH THE PLAINTIFF DID NOT STATE A COUNT SEEKING RECISSION?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

II.  IS THE PLAINTIFF'S CLAIM FOR FRAUD BARRED BY VIRTUE OF THE ECONOMIC LOSS RULE?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

III.  DO THE PLAINTIFF'S CLAIM FOR FRAUD FAIL AS A MATTER OF LAW?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

IV.  DO THE PLAINTIFF'S CLAIMS FOR FRAUD FAIL AS PLAINTIFF FAILED TO STATE ITS ALLEGATIONS WITH PARTICULARITY?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

V.  DO PLAINTIFF'S CLAIMS PROPERLY FALL UNDER THE UNIFORM COMMERCIAL CODE AND DID PLAINTIFF FAIL TO PROPERLY REJECT THE GOODS AND RETURN THE GOODS TO DEFENDANT?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

VI.  DOES THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAIL AS A MATTER OF LAW ESPECIALLY IN LIGHT OF THE CLAIMS, IF ANY, BEING COVERED BY THE UNIFORM COMMERCIAL CODE?

<div align="center">

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

</div>

VII.   IS THE  PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT BARRED AS A RESULT OF THERE BEING A WRITTEN AGREEMENT BETWEEN THE PARTIES?

DEFENDANT ANSWERS "YES."
PLAINTIFF PRESUMABLY ANSWERS "NO."

# INDEX OF AUTHORITIES

**Cases**

*Abbo v Wireless Toyz Franchise, LLC,*
  498 Mich 929; 871 NW2d 205 (2015) ...................................................... 14

*AG v Bd of State Canvassers,*
  500 Mich 907; 887 NW2d 786 (2016) ...................................................... 15

*Alfieri v Bertorelli,*
  295 Mich App 189; 813 NW2d 772 (2012) ............................................... 15

*Allen v Chrysler Grp LLC,*
  2010 Mich App LEXIS 741 (Mar 23, 2010) .............................................. 12

*Anderson v Liberty Lobby, Inc,*
  477 US 242; 106 S Ct 2505; 91 L Ed 2d 202 (1986) ................................ 8, 9

*Ashcroft v Iqbal,*
  556 US 662; 129 S Ct 1937; 173 L Ed 2d 868 (2009) ................................. 7

*Bassett v NCAA,* 528 Fed 426 (CA 6, 2008) ............................................... 6

*Bell Atlantic Corp v Twombly,*
  550 US 544; 127 S Ct 1955; 167 L Ed 2d 929 (2007) ................................. 7

*Bev Smith, Inc v Atwell,*
  301 Mich App 670; 836 NW2d 872, 881-82 (2013) .................................. 20

*Bishop v Wood,*
  426 US 341; 96 S Ct 2074; 48 L Ed 2d 684 (1976) ..................................... 9

*Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham,*
  479 Mich 206; 737 NW2d 670 (2007) ...................................................... 23

*Colonial Dodge, Inc v Miller,*
  420 Mich 452; 362 NW2d 704 (1984) ...................................................... 21

*Cooper v Auto Club Ins Ass'n,*
  481 Mich 399; 751 NW2d 443 (2008) ...................................................... 17

*Cromwell v Equicor-Equitable HCA Corp,*
  944 F2d 1272 (CA 6, 1991) ..................................................................... 10

*DirectTV, Inc v Treesh,*
    487 F3d 471 (CA 6, 2007) ................................................................ 6

*Doe v Roman Catholic Archbishop,*
    264 Mich App 632; 692 NW2d 398 (2004) .................................. 15

*Dynamic Enterprises, Inc v Fitness World of Jackson,*
    32 BR 509 (BK MD Tenn, 1983) ..................................................... 9

*Eerdmans v Maki,*
    226 Mich App 360; 573 NW2d 329 (1997) .................................. 18

*Foreman v Foreman,*
    266 Mich App 132; 701 NW2d 167 (2005) .................................. 16

*Frankenmuth Mut Ins Co v Masters,*
    460 Mich 105; 595 NW2d 832 (1999) .......................................... 23

*George v Spencer,*
    56 Mich App 249; 223 NW2d 736 (1974) .................................... 18

*Gloeser v Moore,*
    283 Mich 425; 278 NW 72 (1930) ............................................... 10

*Greenberg v Life Ins Co of VA,*
    177 F3d 507 (CA 6, 1999) ............................................................... 7

*Head v Phillips Camper Sales & Rental, Inc,*
    234 Mich App 94; 593 NW2d 595 (1999) .................................... 22

*Hi-Way Motor Co v International Harvester Co,*
    398 Mich 330; 247 NW2d 813 (1976) .......................................... 19

*Huron Tool & Engineering Co v Precision Consulting Services,*
    209 Mich App 365; 532 NW2d 541 (1995) .................................. 17

*In re Kramek Estate,*
    268 Mich App 565; 710 NW2d 753 (2005) .................................. 24

*In re SMEC, Inc,*
    160 BR 86 (MD Tenn, 1993) ......................................................... 10

*Intervale Steel Corp v Borg & Beck Div, Borg-Warner Corp,*
    578 F Supp 1081 (ED Mich, 1984) ............................................... 20

*Jackson v City of Columbus*,
  194 F3d 737 (CA 6, 1999) ....................................................................... 7

*Jaffa v Shackett*,
  114 Mich App 626; 319 NW2d 604 (1982) ........................................ 15

*Kalmanath v Mercy Mem'l Hosp Corp*,
  194 Mich App 543; 487 NW2d 499 (1992) ........................................ 18

*Local Emergency Fin Assistance Loan Bd v Blackwell*,
  299 Mich App 727; 832 NW2d 401 (2013) ....................................... 24

*Matsushita Elec Indus Co v Zenith Radio Corp*,
  475 US 574; 106 S Ct 1348; 89 L Ed 2d 538 (1986) ........................ 8

*McMullen v Joldersma*,
  174 Mich App 207; 435 NW2d 428 (1988) ................................. 13, 15

*Montgomery Ward & Co v Williams*,
  330 Mich 275; 47 NW2d 607 (1951) .................................................. 16

*Moore v Philip Morris Co*,
  8 F3d 335 (CA 6, 1993) ......................................................................... 9

*Neibarger v Universal Coops, Inc*,
  439 Mich 512 486 NW2d 612 (1992) .......................................... 12, 13

*Nieves v Bell Indus*,
  204 Mich App 459; 517 NW2d 235 (1994) ................................. 15, 16

*Overton v Anheuser-Busch Co*,
  205 Mich App 259; 517 NW2d 308 (1994) ....................................... 19

*QQC, Inc v Hewlett-Packard Co*,
  258 F Supp 2d 718 (ED Mich, 2003) .................................................. 7

*Reliable Carriers Inc v Moving Sites LLC*,
  309 F Supp 3d 473 (ED Mich, 2018) ................................................... 6

*Roberts v Saffell*,
  280 Mich App 397; 760 NW2d 715 (2008) ....................................... 14

*Samuel D Begola Services, Inc v Wild Bros*,
  210 Mich App 636; 534 NW2d 217 (1995) ....................................... 17

*Scarber v Palmer,*
808 F3d 1093 (CA 6, 2015) ...................................................................... 12

*Tellabs, Inc v Makor Issues & Rights, Ltd,*
551 US 308; 127 S Ct 2499; 168 L Ed 2d 179 (2007) ................................. 7

*Terrien v Zwit,*
467 Mich 56; 648 NW2d 602 (2002) ........................................................ 23

*Trimble v Metro Life Ins Co,*
305 Mich 172; 9 NW2d 49 (1943) ............................................................ 23

*Two Men and a Truck/International Inc v Two Men and a Truck/Kalamazoo, Inc,*
949 F Supp 500 (WD Mich, 1996) .............................................................. 9

*United States v Diebold,*
369 US 654; 82 S Ct 993; L Ed 2d 176 (1962) ............................................ 9

*US v Sanford,*
476 F3d 391 (CA 6, 2007) ........................................................................ 12

*VHS Huron Valley Sinai Hosp v Sentinel Ins Co,*
322 Mich App 707; 916 NW2d 218 (2018) ............................................... 23

*Vill of Edmore v Crystal Automation Sys Inc,*
322 Mich App 244; 911 NW2d 241 (2017) ............................................... 23

*Webb v First of Michigan Corp,*
195 Mich App 470; 491 NW2d 851 (1992) ............................................... 16

*Weiner v Klais & Co, Inc,*
108 F3d 86 (CA 6, 1997) ............................................................................ 8

*Windham v Morris,*
370 Mich 188; 121 NW2d 479 (1963) ...................................................... 18

*Ziegler v IBP Hog Market, Inc,*
249 Fed 509 (CA 6, Cir 2001) .................................................................... 6

**Statutes**
42 United States Code 1985(5)(3) .............................................................. 8

42 United States Code 1986 ....................................................................... 8

Michigan Compiled Laws 440.2401(d) ............................................................10, 11

Michigan Compiled Laws 440.2508 ...................................................................... 22

Michigan Compiled Laws 440.2601 ...................................................................... 22

Michigan Compiled Laws 440.2602(2)(a) ............................................................ 11

Michigan Compiled Laws 440.2606 ...................................................................... 19

Michigan Compiled Laws 440.2607(1) .................................................................. 22

Michigan Compiled Laws 440.2607(2) .................................................................. 20

Michigan Compiled Laws 440.2608 ...................................................................... 21

Michigan Compiled Laws 440.2608(1) .................................................................. 22

Michigan Compiled Laws 440.2608(3) .................................................................. 11

Michigan Compiled Laws 440.2703 ...................................................................... 22

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................6

Federal Rule of Civil Procedure 32.1 .................................................................... 12

Michigan Court Rule 2.112(B)(1) .......................................................................... 15

## INTRODUCTION

The instant matter before the Court has very few disputed material facts, and the law is abundantly clear that Plaintiff's claims are without basis and must be dismissed by this Court. Interestingly enough, the Plaintiff first filed suit in a local Court in Missouri, which was transferred to the United States District Court of Missouri Western Division. The Court ultimately dismissed the case ruling that the Court lacked jurisdiction and that jurisdiction was appropriate in Michigan. While the Court declined to address Plaintiff's substantive claims in making its Jurisdiction ruling, the Federal Court had to make certain fact determinations so that the Court could determine jurisdiction, minimal contacts, etc. The Federal Court ultimately determined that Defendant shipped nothing to Plaintiff in Missouri or elsewhere; rather, Plaintiff made all of the arrangements for shipping, and the shippers were in fact Plaintiff's agents, not Defendant Universal's.

While Plaintiff filed this case and set forth counts relating to breach of contract, quantum meruit, and fraud in the inducement, because the transaction involved the sales of goods, none of these claims has any substance and in any event are controlled by the Uniform Commercial Code. Yet Plaintiff alleges no UCC claims and does not even mention the UCC. The claims are moreover now stale and barred by the applicable Statute of Limitations, *even if* the claims had any merit to begin with.

## STATEMENT OF FACTS

Plaintiff Mighty Good Solutions, LLC ("MGS") is a Missouri Limited Liability Company that manufactures household goods including hand sanitizer. **(ECF No.1**

PageID.2). MGS alleges that in the Spring of 2020, it sought out a specific pump used in the manufacturing of its hand sanitizer (**ECF No.1 PageID.2**). MGS alleges that Universal GP Products, LLC ("Universal") represented that it had the pumps available and that it could deliver the pumps within two weeks – such that Universal could be MGS's exclusive supplier. (**ECF No.1 PageID.3**). Universal accepted two purchase orders sent by MGS on May 22, 2020, and June 1, 2020, and MGS paid Universal $966,700.00 for nearly 1.5 million pumps. (**ECF No.1 PageID.3**).

MGS alleges that Universal delivered[1] 845,000 pumps of the incorrect size and that Universal did so outside of the two-week time frame. (**ECF No.1 PageID.4**). Moreover, MGS alleges that Universal's non-conforming pump did not fit securely and that MGS incurred costs to add a piece to make the pumps fit securely to the MGS bottle. (**ECF No.1 PageID.3**). MGS alleges that Universal refused to process a refund and failed to make arrangements to retrieve the alleged non-conforming goods. (**ECF No.1 PageID.3**).

On December 20, 2020 MGS filed a civil action in the Jackson County, MO Circuit Court pleading causes of action against Universal for breach of contract, unjust enrichment, and fraudulent inducement.[2] (**Exhibit 1**). On February 10, 2021, Universal, after having been served, filed a Removal Petition to the United States District Court

---

[1] As the Court will ultimately see, Universal did not deliver anything to MGS rather MGS arranged for shipment through trucking companies and had the pumps driven to their ultimate destination. MGS paid for the shipping via the trucking companies, and MGS paid for the costs of same.

[2] The Court will note that these are the identical claims being filed in the instant matter before this Court.

Western Division of Missouri Western Division and then filed a Motion to Dismiss for lack of personal jurisdiction. (**Exhibit 1**). The Federal Court granted the Motion to Dismiss, determining that it lacked jurisdiction and that Michigan was the appropriate State with jurisdiction over the instant matter. (**Exhibit 2**). As set forth above, although the Federal Court did not address substantive issues, the Court did determine several factual issues that were required in ascertaining and ultimately ruling on jurisdiction. One of those issues was that Plaintiff MGS arranged and paid for the shipment of all of the material and that the carriers (trucking companies) were Plaintiff MGS's agents . The Court on page 5-6 of its Opinion and Order, provides in pertinent part, as follows:

> Mighty Good submitted bills of lading to the Court which confirm Universal's assertions. Some of these bills of lading show that products were to ship from Universal GP Products, LLC in Warren, Michigan to Champion Brands in Clinton, Missouri. Doc. No. 29-2 at 1, 4. The carriers for these products were Dohrn Transfer and Old Dominion Freight, and freight charges were billed to Logistic Resource Group in Overland Park, Kansas. Id. Other receipts show that products were to ship from Universal in Warren, Michigan to Southwest Manufacturing Partners in Plano, Texas. Id. at 5-8. The carrier for these products was Landstar Ranger, and freight charges were billed to Mighty Good c/o Redstone Logistics. Id. Mighty Good c/o Redstone Logistics and Logistic Resource Group, who paid for these carriers to send Universal's products into Missouri and Texas, have the same address and are, presumably, the same party.

> It is clear to the Court that Mighty Good paid for the carrier services that transported Universal's products out of Michigan and into Missouri. The carriers Mighty Good paid for were agents of Mighty Good; therefore, Mighty Good made the deliveries. Because Universal did not, through its employees or agents, deliver its products into Missouri, it did not transact business in Missouri.

Exhibit 2, pages 5-6

It is imperative to note that Universal does not agree with many of MGS's alleged facts despite their not being material. What is material is that MGS alleges that the pumps were to be 28-400 Pumps but in fact Universal supplied 28-410 Pumps (ECF

No.1 PageID.3). The Court will note that the Contract does not provide for this designation as MGS claims (See Purchase Order, **Exhibit 3** and **Exhibit 4**). Additionally, MGS alleges that the pumps were to be delivered within two weeks, and, of course, MGS alleges that this was especially important (Paragraph 9). Again, the Court will note that the alleged important time designation is absent from the parties' written agreement/Purchase Orders. (**Exhibits 3** and **4**). Query, if these terms were so important, why did MGS not include them in its Purchase Orders?

The Court should note that MGS placed its order during the beginning period of the Coronavirus pandemic. Hand sanitizer could not be located, and the demand for it was high. MGS had secured a Purchase Order with Sam's Club but had no way of filling the Purchase Order as bottles, pumps, and the sanitizer itself was scarce and, in large part, unavailable. Having been referred to Universal through a Sam's Club representative, Plaintiff approached Universal in near panic and needed to obtain pumps, no matter the costs, no matter the terms. Timing was always an issue because the pumps were being manufactured in China. Once Universal located the pumps, it required a signed Purchase Order(s) so ensure that MGS would not back out.

MGS did immediately take possession of the first 1,144,000 pumps but then never took possession of the other 337,000 pumps, for which it had already paid. (**Exhibits 5 & 6**, 10/29/21 and 02/24/21 Declarations of Jose Reyes filed in the MO Federal Case). Moreover, MGS never paid for the additional pumps ordered by Universal pursuant to the Purchase Orders (**Exhibits 3** and **4**). Indeed, MGS owes Universal for approximately $652,071.81 for the unpaid for goods and storage charges. What likely

happened was that the market became saturated with product as time went by, and MGS was able to secure pumps and bottles for its hand sanitizer at a lower cost than what it had negotiated in writing with Universal. To that end, MGS manufactured a basis to *escape* from its written agreement with Universal, and what could be a better scapegoat than the failure of the pumps to fit the newly obtained bottles that MGS obtained from a new supplier without disclosing this to Universal. In MGS's desire to save monies, it may very well have increased its costs by purchasing a non-conforming bottle that did not match the already contracted for pump.

The bottom line is that MGS initially provided Universal with the bottle, which Universal's pump matched perfectly. Thereafter, when MGS switched its bottle supplier, the result of which was that the bottles may have not been such a perfect fit. The fault of his failure, however, was on MGS and its bottle supplier, not on Universal, who had never been notified, let alone consulted regarding the switch. Moreover, Universal strongly believes that MGS was able to procure pumps at a lower price than what it had contractually obligate itself to with Universal as the market began to flood with product and the prices came down dramatically allowing Plaintiff to obtain the pumps for a lower price in the open market. In any event, the subject claims are deficient as the contract terms do not call for or require the two week shipping period, and the contract does not call for the #28-410 pumps versus the #28-400 pumps. Further, the UCC controls this transaction, and MGS neither rejected the goods nor acted in conformity with the dictates of the UCC. Universal accordingly seeks an order of this Court dismissing MGS's claims.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(6)

The instant claims are state claims, this Court's jurisdiction being based on diversity of the parties, Universal being a Michigan entity and MGS being a Kansas entity. Universal does not challenge the Court's jurisdiction. Universal does take issue with MGS's Complaint and the claims set forth therein.

A motion under FRCP 12(b)(6) tests the Complaint's sufficiency. The court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v NCAA*, 528 Fed 426, 430 (CA 6, 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims." Id. Where the court determines that "the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief," dismissal is appropriate. *Ziegler v IBP Hog Market, Inc*, 249 Fed 509, 512 (CA 6, 2001).

FRCP 12(b)(6) provides for the dismissal of a case where the Complaint fails to state a claim upon which relief can be granted. *Reliable Carriers Inc v Moving Sites LLC*, 309 F Supp 3d 473, 476 (ED Mich, 2018). The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc v Treesh*, 487 F3d 471, 476 (CA 6, 2007).

Rule 12(b)(6) requires that a Complaint "contain something more. . .than. . .a

statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action." *Bell Atlantic Corp v Twombly*, 550 US 544; 127 S Ct 1955, 1965; 167 L Ed 2d 929 (2007) (emphasis added) (internal citation omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v Iqbal*, 556 US 662; 129 S Ct 1937, 1949; 173 L Ed 2d 868 (2009). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id* at 1950 (internal quotation marks and citation omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), the Court must consider the Complaint as well as (i) documents referenced in the pleadings and central to plaintiff's claims, (ii) matters of which a court may properly take notice, (iii) public documents, and (iv) letter decisions of government agencies may be appended to a motion to dismiss. *Tellabs, Inc v Makor Issues & Rights, Ltd*, 551 US 308; 127 S Ct 2499, 2509; 168 L Ed 2d 179 (2007); *Greenberg v Life Ins Co of VA*, 177 F3d 507, 514 (CA 6, 1999); see also *Jackson v City of Columbus*, 194 F3d 737, 745 (CA 6, 1999)). Specifically in contract cases such as this, "if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc v Hewlett-Packard Co*, 258 F Supp 2d 718, 721 (ED Mich, 2003) (citing *Weiner v Klais & Co, Inc*, 108 F3d 86, 89 (CA 6, 1997)). "Otherwise, a plaintiff with a legally

deficient claim would survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner, supra.*

As this Court will note from reading MGS's Complaint, Plaintiff fails to provide this Court with a factual basis supporting a cause of action for claims of nuisance or a violation of 42 USC 1985(5)(3).[3]

## II.    Federal Rule of Civil Procedure 56(c)

A party is entitled to summary judgment if it demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec Indus Co v Zenith Radio Corp*, 475 US 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  56(c). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. *Anderson v Liberty Lobby, Inc*, 477 US 242, 252; 106 S Ct 2505; 91 L Ed 2d 202 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion

---

[3] Plaintiff also brings a claim for violation of 42 USC 1986; however, this claim is contingent on a plaintiff successfully bringing a §1985 claim, and Plaintiff's claim is likewise barred by the applicable period of limitations.

for summary judgment in order to defeat the motion. *Moore v Philip Morris Co*, 8 F3d 335, 340 (CA 6, 1993); *Anderson*, 477 US at 249–50.

As the Supreme Court recognized, while a party moving for Summary Judgment has the burden of establishing the lack of any genuine dispute over a material fact and entitlement to judgment as a matter of law, the movant's papers are carefully scrutinized, while those of opposing party are indulgently regarded. *Bishop v Wood*, 426 US 341; 96 S Ct 2074; 48 L Ed 2d 684 (1976). See also, *United States v Diebold*, 369 US 654; 82 S Ct 993; L Ed 2d 176 (1962), wherein the Court ruled that for purposes of such a motion, the non-movant's version of the facts must be accepted and all disputed matters must be resolved in favor of the non-movant.

## LEGAL ARGUMENT

### I. RECISSION:

Recission is an effort to set aside the deal made and put the parties in the same position that they were in before the deal was made. There may be a myriad of reasons or rationales for wanting recission; however, at the end of the day, the law is quite simple: if a party chooses to set aside the transaction, it ***must*** return all benefits received ***before*** filing suit. Failure to return all benefits received bars the right to the claims asserted. In *Two Men and a Truck/International Inc v Two Men and a Truck/Kalamazoo, Inc*, 949 F Supp 500, 507 (WD Mich, 1996) (citing *Dynamic Enterprises, Inc v Fitness World of Jackson*, 32 BR 509, 522 (BK MD Tenn, 1983), abrogated on other grounds, *In re SMEC, Inc*, 160 BR 86 (MD Tenn, 1993)); see also *Gloeser v Moore*, 283 Mich 425, 430; 278 NW 72 (1930), the

Court ruled that to recover in recission, plaintiff "must seasonally assert such rescission, tender back what he has received, and demand repayment of the purchase price.".

MGS will certainly argue that its Complaint did not assert a claim for recission and, to that end, it should not be bound by the restrictive requirements of recission as a claim. The law, however, knows that a savvy attorney will seek to obtain the fruits but perhaps through a different label. To that end, the law is well settled that Courts are not bound or restricted by the label placed on a claim by a party; rather, the claim's essence is the driving force that should concern the Court and be addressed accordingly. See *Cromwell v Equicor-Equitable HCA Corp*, 944 F2d 1272, 1276 (CA 6, 1991). MGS has retained the goods, has refused to pick up the balance of product purchased (pumps), and has failed to pay $652,071.81 to Universal and sues for all of the monies paid. Applicable law does not allow for this. Rather, the goods must be returned prior to filing suit.

The UCC very clearly identifies that the Plaintiff who is seeking the return of its monies has an obligation to return the goods if the Plaintiff properly rejected the goods. Notably, MCL 440.2401(d) provides: "A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. *Revesting of title under this subdivision occurs by operation of law and is not a 'sale'.*"

In the case at bar, which arises because of MGS's demand for its monies back, MGS *must* demonstrate that it properly rejected the goods and then made the effort to

return them, which would revest title in Universal. While there has been no attempt to reject or revoke acceptance of the goods at issue and while the Complaint is absolutely silent vis-à-vis the UCC, there is no allegation of any sort that Universal attempted to retain or reserve title to the goods shipped. Rather, MGS inspected the goods or could have inspected the goods and could have easily tested one pump in merely one bottle; clearly, whatever MGS did or did not do, it found that the pumps provided to be satisfactory, and then arranged to have them shipped from Michigan. Universal does not assert a retained right in the goods, nor does MGS allege that Universal seeks to assert a retained right in the goods. Rather, MCL 440.2401, provides that rejection or revocation, "whether or not justified" revests title to the rejected or revoked acceptance of goods to the seller, "by operation of law." It is exactly that operation that Universal addresses now so that if MGS honestly believes that it has rejected the goods, it must provide the goods back to Universal.

Furthermore, as MGS ignores §2401(d), it also completely ignores MCL 440.2602(2)(a) (pertaining to rejection) and MCL 440.2608(3) (pertaining to revocation). The Michigan Court of Appeals has held that both UCC sections provide that exercise of ownership by the buyer following rejection or revocation of acceptance is wrongful: "MCL 440.2602(2)(a) states that after rejection, which is synonymous with revocation in this context under MCL 440.2608(3), 'any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller.'" *Allen v*

*Chrysler Grp LLC*, 2010 Mich App LEXIS 741, at *10 (Mar 23, 2010) .(**Exhibit 6**).[4]

Thus, the UCC clearly provides that title to revoked or rejected goods revests in the seller regardless of the validity of rejection or revocation and that continued exercise of ownership by a buyer of rejected and/or revoked goods is wrongful as against the seller.

Again, Universal does not seek return of the goods and states that MGS failed in all respects to reject them. In fact, MGS ironically seeks the return of its monies and yet in the Complaint it admits and acknowledges that it used the product with a modification. This addresses yet another UCC provision as it relates to cover and expending what is necessary to use the goods and then seek reimbursement. Again MGS fails wholeheartedly in this regard and of course does not even mention the UCC ,let alone cover, etc.

## II.    ECONOMIC LOSS DOCTRINE:

The economic loss doctrine provides that where a purchaser's expectations in a sale are frustrated because the product purchased does not conform to what was believed to have been purchased and/or is not working properly, purchaser's remedy, purchaser having suffered only "economic" loss, is in contract alone *Neibarger v Universal Coops, Inc*, 439 Mich 512, 520-521; 486 NW2d 612 (1992).This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial

---

[4] Although not binding, unpublished decisions may be considered for their persuasive value. *Scarber v Palmer*, 808 F3d 1093, 1096 (CA 6, 2015); *US v Sanford*, 476 F3d 391, 396 (CA 6, 2007).  Opinion is attached pursuant to FRCP 32.1.

purposes, where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner that has traditionally been remedied by resort to tort law. See *Neibarger*, 439 Mich at 520-521. Thus, the Michigan Supreme Court concluded that the economic-loss doctrine applied in Michigan, and, as a consequence, "where a plaintiff seeks to recover for economic loss purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations." *Neibarger*, 439 Mich at 527-528. The economic-loss doctrine was originally applicable only between sophisticated commercial parties of nominally equal knowledge and bargaining power, in other words, businesses. The doctrine's purpose was to prevent a plaintiff from recovering in tort for a harm that was fundamentally contractual, unless the plaintiff had suffered an injury that was not solely economic. *Neibarger*, 439 Mich at 527-529.

At bar, MGS has sued for fraud in the inducement, a tort theory. This claim, however, is barred by virtue of the economic loss theory; no matter how MGS spins the story, the instant matter is, at best, a breach of contract, covered by the UCC exclusively. It should be noted that the Missouri Federal Court likewise made this determination in its Opinion and Order (**Exhibit 2**, P.11), when the Court stated as follows: *The damage to Mighty Good was more contractual than tortious in nature*.

## III.   FRAUD AND MISREPRESENTATION

In *McMullen v Joldersma*, 174 Mich App 207; 435 NW2d 428 (1988), the Court was specifically confronted with the issue of a sellers' agent's liability under both a silent fraud and a negligent misrepresentation theory. The Court of Appeals affirmed the

dismissal of the sellers' agent because of lack of privity, the law stating that the alleged failure to disclose what one has a duty to disclose constitutes **_silent fraud_**. A silent-fraud claim cannot be maintained unless it can be established that there was (1) a duty to disclose, (2) an omission of a material fact from an otherwise truthful statement, and (3) the intent to mislead. _Abbo v Wireless Toyz Franchise, LLC_, 498 Mich 929, 930-31; 871 NW2d 205 (2015); _Roberts v Saffell_, 280 Mich App 397; 760 NW2d 715 (2008), aff'd 483 Mich 1089; 766 NW2d 288 (2009).

Here, MGS alleges several claims; factually and legally, however, they fail. All of MGS's allegations are that Universal misrepresented the quality or type of pump that it was providing to MGS, even though the Purchase Orders provide no such description of a 28-400 Pump versus a 28-410 Pump. MGS promotes in its Complaint the concept that Universal agreed to a 28-400 Pump and for delivery within two weeks. Yet, the Purchase Orders, of which MGS is the originator contain no such term or condition (See **Exhibits 3** and **4**). Thus, even if all of the information upon which MGS relied was truly false, it does not rise to the level of fraud and/or misrepresentation seeing how Universal had no independent knowledge of what MGS was seeking and had matched the pump to the bottle that MGS had supplied. MGS moreover cannot possibly assert that Universal was making any misrepresentation of fact or that it was hiding the true nature of the pump that it was going to supply. Exhibit 7 is a letter to MGS's Counsel referencing an email between the parties where it is clear as day that the pump being supplied was the 28/410 Pump.

The elements of a fraudulent concealment action are: "'(1) a material

representation which is false; (2) *known by defendant to be false, or made recklessly without knowledge of its truth or falsity;* (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury'". *Doe v Roman Catholic Archbishop*, 264 Mich App 632, 652; 692 NW2d 398 (2004), citing *McMullen v Joldersma*, 174 Mich App at 213, quoting *Jaffa v Shackett*, 114 Mich App 626, 640-641; 319 NW2d 604 (1982). Silent fraud and negligent misrepresentation both require a defendant to owe a duty to the plaintiff. *Alfieri v Bertorelli*, 295 Mich App 189, 194; 813 NW2d 772 (2012); *McMullen v Joldersma*, 174 Mich App 207. Finally, MCR 2.112(B)(1) requires that fraud allegations must be stated with particularity. *AG v Bd of State Canvassers*, 500 Mich 907, 910 n 16; 887 NW2d 786 (2016). MGS has not done so and this is fatal to its Complaint.

Again, while MGS does not even allege that Universal owed some duty to investigate further than the information that was already at hand and had been supplied by MGS, at the end of the day, MGS had the very same available resources as did Universal and further MGS had the benefit of inspecting the goods *before* accepting them by virtue of its Logistics Company and Shipper. The law would certainly cogently suggest vigilance by MGS, and MGS had the full opportunity to inspect and ensure that it was getting the proper pump that it now suggests was not provided.

Absolutely on point is *Nieves v Bell Indus*, 204 Mich App 459, 464; 517 NW2d 235 (1994), where the Court stated, "A misrepresentation claim requires reasonable reliance on a false representation. (citation omitted). *There can be no fraud where a person*

*has the means to determine that a representation is not true."* (emphasis added) (citing *Montgomery Ward & Co v Williams*, 330 Mich 275; 47 NW2d 607 (1951); *Webb v First of Michigan Corp*, 195 Mich App 470, 474; 491 NW2d 851 (1992). In *Nieves*, supra, the Court stated, "[A] plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore." *Nieves*, 204 Mich App at 464-465.

MGS alleges that Universal represented the composition, quantity, and type of the subject goods, i.e., the 28/400 Pump, Universal provided the information that it had and provided MGS with the actual pump as an example of what it was providing; MGS could, should, and did, inspect the shipment before accepting the goods and then arranging and actually shipping them nearly 700 miles across the country before deciding that it wanted to reject the shipment. Because the information and pump was readily ascertainable to MGS and because MGS could have done a better inspection or investigation of the product for which Universal was merely a broker and was obtaining from another seller, MGS cannot now pursue a cause of action; could not have been any *reasonable reliance on a false representation*. *Nieves*, *Montgomery Ward* and *Webb*, *supra*.. Lastly, as set forth below, claims for representations as to value or quality are not actionable and, at best, such representations are commercially deemed *puffing*.

In any claim of fraud, the alleged victim of the fraudulent representation or concealment "must also show that any reliance on defendant[s'] representations was reasonable." *Foreman v Foreman*, 266 Mich App 132, 141-142; 701 NW2d 167 (2005). Proof of reasonable reliance is required "[b]ecause fraud cannot be perpetrated upon one who

has full knowledge to the contrary of a representation . . . ." *Cooper v Auto Club Ins Ass'n*,
481 Mich 399, 414; 751 NW2d 443 (2008) (quotation marks and citation omitted).

Again, MGS cannot demonstrate any reasonable reliance as to the type of goods,
information that was easily and readily ascertainable to MGS and its agents at the time
of pick-up in Michigan, and MGS could have easily tested one pump in a bottle,
determined the alleged looseness (not a tight fit), and promptly have rejected the goods.
It did not. Further, because MGS was not and could not be relying upon Universal,
especially when any representation as to quality or tightness of the pump to the bottle
(which Plaintiff switched without informing Universal) was nothing more than
puffing, at best.

Fraud in the inducement "addresses a situation where the claim is that one party
was tricked into contracting," that is "based on pre-contractual conduct." *Huron Tool &
Engineering Co v Precision Consulting Services*, 209 Mich App 365, 371; 532 NW2d 541 (1995)
(citation omitted). It "occurs where a party materially misrepresents future conduct
under circumstances in which the assertions may reasonably be expected to be relied
upon and are relied upon." See *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636,
639; 534 NW2d 217 (1995).

Here, what possibly could have been represented by Universal in an effort to trick
MGS? If MGS was so concerned, it should have spelled out the terms of "two- weeks
delivery" and the 28/400 Pump versus the 28/410 Pump, in the written agreements, i.e.
the Purchase Orders (**Exhibits 3** and **4**). The trickery could not exist to the extent MGS
had reasonable means to ascertain the facts, which, in this case, includes testing a bottle

with the pump at the time of the merchandise's pick up by MGS's agent, there cannot be fraud and certainly no such claim exists.

## IV.  EXPRESSIONS OF OPINION AND PUFFING/FRAUD

MGS alleges that Universal represented to it the quality and compatibility of the goods, i.e., that the #28-400 Pumps fitting tightly and sealed into a bottle. Assuming that Universal truly did this and provided these opinions of value and/or expressed to MGS, all of this is deemed "*puffing*" by the law and is not actionable.

Mere expressions of opinion or "puffing" are not actionable. See *George v Spencer*, 56 Mich App 249; 223 NW2d 736 (1974) (broker's representation that he had interested party at specific purchase price and that he could sell property quickly at a profit was nonactionable "puffing"). In *George*, the Michigan Court of Appeals affirmed the trial court's determination that a real estate broker's statement that other parties were interested in the property at $2,500 per acre was mere puffing, Likewise, mere opinion may not be the basis for a cause of action for misrepresentation. *Windham v Morris*, 370 Mich 188; 121 NW2d 479 (1963) (estimated cost of repair would constitute opinion on which claim could not be made) (dictum).

An action for fraudulent misrepresentation must be predicated on a statement relating to a past or an existing fact. Future promises are contractual and may not constitute actionable fraud. *Eerdmans v Maki*, 226 Mich App 360; 573 NW2d 329 (1997). Likewise, the Supreme Court in *Forge v Smith*, 458 Mich 198; 580 NW2d 876 (1998), reached the same conclusion with regard to innocent misrepresentation, citing *Kalmanath v Mercy Mem'l Hosp Corp*, 194 Mich App 543; 487 NW2d 499 (1992), and *Hi-Way*

*Motor Co v International Harvester Co*, 398 Mich 330; 247 NW2d 813 (1976). Puffing does not give rise to actionable fraud. *Overton v Anheuser-Busch Co*, 205 Mich App 259, 261; 517 NW2d 308 (1994).

Based on the foregoing, MGS fails in its claims against Universal for fraud in the inducement based on alleged comments or representations that were nothing more than opinion or puffing at best.

## V.   FAILURE TO REJECT THE GOODS AND THEN FAILING TO RETURN THEM.

### A.   Exercise of Right to Inspect and Acceptance of Goods

MCL 440.2606 provides:

(1)   *Acceptance of goods occurs when the buyer*
    (a)   *after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or*
    (b)   *fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or*
    (c)   *does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.*
(2)   *Acceptance of a part of any commercial unit is acceptance of that entire unit.*

Thus, the key is whether a buyer has a reasonable opportunity to inspect. If the buyer had opportunity to inspect on tender, did so, and then accepted the goods, that constitutes an act signifying acceptance in the absence of notice that inspection discovered a nonconformity.

The MO Federal Court determined that MGS hired both the logistics company and the shipping company (See Federal Opinion and Order **Exhibit 2**). The Federal

Court likewise determined that these entities were MGS's agents. (**Exhibit 2**). Clearly,

MGS's agent did an inspection or could have done an inspection (i.e., simply screw a

pump into a bottle) *before* accepting the goods and then shipping them 700 miles away

from Michigan to Missouri. In fact, while Universal contends that MGS never actually

rejected the goods but, rather, filed suit long after the accepting them , in support of the

proposition that MGS's rejection after the fact, when it had ample time and opportunity

to inspect and then MGS having failed to return the goods to Universal, demonstrates

that the claims of MGS must fail.

> "The fact that plaintiff had a full and fair opportunity to **inspect** the Dodge prior to purchasing it, and an even greater opportunity to inspect the Dodge after purchasing it, necessarily shortened the allowable period for discovering any nonconformities or inauthenticities. **'[Q]ualities that are apparent . . . reasonably should be inspected and complained of soon after the goods . . . have been delivered** . . . .'" *Bev Smith, Inc v Atwell*, 301 Mich App 670, 686; 836 NW2d 872, 881-82 (2013).

> "The Code requires that rejection will occur when the goods are tendered and inspected or after the buyer has had a reasonable time for inspection. Timely rejection ensures the goods can be easily restored to the seller so that he can either make them conforming and tender them back to the buyer or simply sell the goods to another. In this way damages will be mitigated and commercial loss curtailed."

> *Intervale Steel Corp v Borg & Beck Div, Borg-Warner Corp*, 578 F Supp 1081, 1086 (ED Mich, 1984).

Moreover, MCL 440.2607(2) provides that the buyer's acceptance of the goods

with knowledge of a nonconformity precludes a rejection of nonconforming goods: :

> (2)    Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by

this article for nonconformity.

A buyer may revoke acceptance in only certain circumstances (that are inapplicable here) based on the facts. MCL 440.2608 provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

 (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

 (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

MGS, as buyer, inspected the goods on tender, and the contract specifies that certain numerical nonconformities might exist and exact numbers are not guaranteed, it thus would preclude the ability to revoke acceptance.

Failure to discover a nonconformity of goods to a contract before acceptance does not preclude revocation of acceptance where the nonconformity was difficult to discover. *Colonial Dodge, Inc v Miller*, 420 Mich 452; 362 NW2d 704 (1984). But this is not the case when the alleged nonconformity reasonably should have been discovered on inspection and simply by testing one pump in one bottle.

B. **Higher Standard for Revocation of Acceptance; Same Rights and Duties as to Goods**

MCL 440.2608 provides:

*(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it*

 *(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or*

 *(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before*

> *acceptance or by the seller's assurances.*
>
> (2)  *Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.*
>
> (3)  *A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.*

"Under MCL 440.2601, the buyer may reject a tender if the goods 'fail in any respect to conform to the contract.' If a buyer rejects a nonconforming tender, the seller may have a right to cure the defect. MCL 440.2508. The seller can also recover damages if the buyer wrongfully rejects. MCL 440.2703. ***Once the buyer accepts the tender, however, he loses the ability to reject the goods.*** The buyer must pay for the goods at the contract rate, MCL 440.2607(1), and may only revoke his acceptance if the defect substantially impairs its value to him. MCL 440.2608(1). If the defect does not rise to this level of severity, the buyer is limited to those remedies available for a breach of contract. The seller, in turn, loses the right to cure, but gains the benefit of the higher substantial impairment standard for revocation. Further, if the buyer wrongfully revokes, the seller may recover damages. MCL 440.2703." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 105; 593 NW2d 595 (1999).

Here, MGS had the obligation and opportunity to inspect the goods before it ever took delivery and accepted the goods. MGS's agents made the inspections, and MGS elected to ship the goods thousands of miles away from California to Michigan and then, once in Michigan, allegedly reject them. Yet, MGS admittedly made no arrangements to return the goods to Universal and made no arrangements after Universal demanded

their return. Instead, MGS has retained the goods and now demands the return of its money. The law, however, does not provide for that and it is fatal to MGS's claims. That said, the very basis of dismissal of MGS's claims, based upon MGS's failure to return the goods to Universal, is premised on the UCC and proper rejection by MGS.

## VI. BREACH OF CONTRACT AND PAROLE EVIDENCE RULE:

Courts have repeatedly held that the straightforward language of a contract must control. *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002). "[). [W]hen parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not contrary to public policy." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 213; 737 NW2d 670 (2007).

The Court may not "read into the contract terms not agreed upon by the parties." *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018); *Trimble v Metro Life Ins Co*, 305 Mich 172, 175; 9 NW2d 49 (1943). Additionally, "Michigan courts are not permitted to "create ambiguity where the terms of the contract are clear'." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). Lastly, Michigan law also requires the Court to enforce unambiguous contract language such that "a court may not substitute its judgment for the intent of the parties and remake the contract into something the parties never intended." *Vill of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017).

At bar, even if this Court were to reject the requirement for the UCC's

applicability, the Court must reject MGS's claim seeing how MGS seeks to modify the written agreement and insert terms and conditions that were never a part of it. The written agreement between the parties is the Purchase Orders, and MGS is bound by its agreement's terms and conditions, whether or not it suits MGS long after the fact.

The Parol Evidence Rule bars the admission of "evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract," where that contract is "clear and unambiguous." *In re Kramek Estate*, 268 Mich App 565, 573; 710 NW2d 753 (2005).

## VII. UNJUST ENRICHMENT:

The parties here have a written contract, which precludes, as a matter of law, a claim for unjust enrichment. A party may raise a claim of unjust enrichment or quantum meruit "only if there is no express contract covering the same subject matter." *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 734; 832 NW2d 401 (2013). The subject Purchase Orders (**Exhibits 3** and **4**) are the written contract between the parties and, therefore, there can be no claim for unjust enrichment in this matter (Count III of the Complaint).

## CONCLUSION AND PRAYER FOR RELIEF:

In a full throttle panic regarding its Sam's Club order for 5 million bottles of hand sanitizer, MGS reached out to Universal for help. In acquiring the necessary pumps for the bottles, which MGS was procuring elsewhere. Universal matched a pump to the sample bottle that MGS has provided it, obtained MGS's approval of the pump, and ordered them for MGS. After paying for an initial quantity of the pumps, MGS

apparently found another bottle supplier, and, without informing Universal, switched bottles; now claiming that the pumps no longer fit, MGS cancelled the order midstream and has sued Universal to recover the money that it paid. In this UCC-controlled controversy, MGS has elected to eschew the controlling law, instead going after Universal with legal theories with no application whatsoever. The Court should dismiss the Complaint under FRCP 12(b)(6) and grant summary judgment per Rule 56(c).

<div style="margin-left: 40%">

Respectfully submitted,

**WOOD, KULL, HERSCHFUS, OBEE & KULL, P.C.**

By:  /s/ Brian H. Herschfus
Brian H. Herschfus (P41567)
*Attorneys for Defendant*
37000 Grand River Ave., Ste. 290
Farmington Hills, MI 48335-2881
(248) 476-2000
bhh@woodkull.com

</div>

Dated: September 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I electronically filed the foregoing document(s) using the United States District Court for the Eastern District of Michigan, Southern Division's ECF e-filing system, which will automatically send notice of the filing to all attorneys of record.

<div style="margin-left: 40%">

By:     /s/ Brian H. Herschfus

</div>