UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN (DETROIT) DIVISION

| | |
|---|---|
| MIGHTY GOOD SOLUTIONS, LLC,<br><br>PLAINTIFF,<br><br>-V-<br><br>UNIVERSAL GP PRODUCTS, LLC,<br><br>DEFENDANT. | CASE NO. 2:22-CV-11153-DPH-KGA<br><br>HON. DENISE PAGE HOOD<br>MAG. HON. ELIZABETH STAFFORD |

| | |
|---|---|
| MILLER CANFIELD<br>JEFFREY ALAN CRAPKO (P78487)<br>*ATTORNEYS FOR PLAINTIFF*<br>150 W. JEFFERSON AVE STE 2500<br>DETROIT, MI 48226<br>248-267-3237<br>FAX: 248-879-2002<br>CRAPKO@MILLERCANFIELD.COM<br><br>CARMODY MACDONALD P.C.<br>MEGHAN M. LAMPING (59987MO)<br>BRANDON S. STEIN (73707MO)<br>*ATTORNEYS FOR PLAINTIFF*<br>120 SOUTH CENTRAL AVE STE 1800<br>ST. LOUIS, MISSOURI 63105<br>(314) 854-8600<br>FAX 314-854-8660<br>MML@CARMODYMACDONALD.COM<br>BSS@CARMODYMACDONALD.COM | WOOD KULL HERSCHFUS OBEE & KULL, PC<br>BRIAN H. HERSCHFUS (P41567)<br>*ATTORNEYS FOR DEFENDANT*<br>37000 GRAND RIVER AVE STE 290<br>FARMINGTON HILLS, MI 48335<br>248-476-2000<br>FAX: 248-476-3660<br>BHH@WOODKULL.COM |

## DEFENDANT UNIVERSAL GP PRODUCTS, LLC'S MOTION TO DISMISS

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MIGHTY GOOD SOLUTIONS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:21-cv-00080-FJG |
| | ) |
| UNIVERSAL GP PRODUCTS, LLC, | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Universal's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 22). In this matter, Plaintiff Mighty Good seeks redress under Missouri law on three counts: Count I – Breach of Contract; Count II – Unjust Enrichment; and Count III – Fraudulent Inducement. Plaintiff is a limited liability company organized and existing under the laws of the State of Kansas, with its principal place of business in Jackson County, Missouri. Defendant is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business in Grosse Point Park, Michigan.

**I.      Background**

Mighty Good is a manufacturer of household goods, including hand sanitizer. Doc. No. 17 at 2. Mighty Good alleges that in Spring 2020, Universal asserted it would be able to supply Mighty Good with a specific pump used in the manufacturing of its hand sanitizer. Id. Mighty Good alleges Universal represented that it had ready access to the pumps, could deliver them within two weeks, and could be Mighty Good's exclusive supplier of the required pumps. Id. Universal accepted purchase orders sent by Mighty Good on May 22, 2020 and June 1, 2020. Doc. No. 22-1 at 3. Mighty Good alleges it paid $966,700 for nearly 1.5 million pumps, to be delivered within two weeks. Doc. No. 17 at

2.

Mighty Good alleges Universal delivered 845,000 pumps of the incorrect size several weeks past deadline. Id. at 3. As a result of the alleged nonconforming performance, Mighty Good alleges it was forced to include an extra piece in its hand sanitizer to make the pumps fit securely, incurring additional costs. Id. Mighty Good further alleges Universal has refused to process a refund and has failed to make arrangements to retrieve the nonconforming goods. Id.

On December 20, 2020, Mighty Good filed a civil action in the Circuit Court of Jackson County, Missouri pleading causes of action against Universal for breach of contract, unjust enrichment, and fraudulent inducement. On January 11, 2021, Universal was timely served. On February 10, 2021, Universal timely filed its notice of removal to this Court. On April 7, 2021, Universal filed a motion to dismiss for lack of personal jurisdiction. Doc. No. 22. Should the Court find the facts insufficient for the exercise of personal jurisdiction, Mighty Good requests jurisdictional discovery. Doc. No. 23 at 9.

**II.    Legal Standard**

To survive a motion to dismiss, the party invoking jurisdiction bears the burden of demonstrating jurisdiction, as to each claim. Cantrell v. Extradition Corp. of Am., 789 F.Supp.306, 308 (W.D. Mo. 1992). The plaintiff need only present prima facie showing of jurisdiction. Id. However, this prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (citations omitted). If a defendant raises meritorious challenges to personal jurisdiction through affidavits, documents, or testimony, the burden rests with the plaintiff to prove jurisdiction

by affidavits, documents, or testimony. Id.

Personal jurisdiction over a non-resident defendant exists when the defendant's conduct satisfies both Missouri's long-arm statute and the Constitution's due process requirements. Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d 277, 231 (Mo. banc 2010).

A defendant satisfies Missouri's long-arm statute when it transacts business, makes a contract, or commits a tort within Missouri. Mo. Rev. Stat. §506.500.1 (1)-(3). A defendant satisfies the Constitution's due process requirements when it has minimum contacts with the forum state and has purposefully availed itself to that state. Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed 95 (1945); J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S. Ct. 2780, 2787-89, 180 L. Ed. 2d 765, 774-76 (2011). The Court weighs the following five factors to determine whether these requirements have been met: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. Burlington Indus., Inc. v. Mapes Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).

**III.    Discussion**

    **A.    Missouri Long-Arm Statute**

Mighty Good alleges Universal transacted business, made a contract, and committed a tort within Missouri, subjecting Universal to jurisdiction under §§506.500.1(1) – (3). The Court finds Universal did not transact business or make a contract in Missouri but did commit a tort in the state.

> i. §506.500.1(1): Transacting Business

A corporation that engages in the transaction of any business within Missouri is subject to the jurisdiction of Missouri courts as to any cause of action arising from such business. Mo.Rev.Stat. §506.500.1(1).

Universal argues it never transacted business in Missouri because it conducted all negotiations and performance of the contested contract in Michigan. Doc. No. 22 at 9. Universal alleges that the extent of its contact with Missouri are the phone and email communications it engaged in with Mighty Good's Missouri employees. Universal argues that "the use of the mail or telephone communications, without more, does not constitute the transaction of business for the purposes of long arm jurisdiction in Missouri." Id. (citing Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A., 8 S.W.3d 893, 904 (Mo. Ct. App. 2000); Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Arnold v. AT&T, Inc., 874 F.Supp.2d 825, 833 (E.D. Mo. 2012)).

Mighty Good argues that the threshold for what constitutes a business transaction is so low that "[t]he business may consist of a single transaction, if that is the transaction sued upon." Doc. No. 23 at 7 (citing State ex rel. Newport v. Wiesman, 627 S.W.2d 874 (Mo. banc 1982)). Directing the Court to two purchase orders that seemingly instruct Universal to deliver its pumps to Mighty Good in Missouri, Mighty Good argues that these orders constitute satisfactory business transactions because they are currently at issue. Id.

The question before the Court turns neither on communication nor on purchase orders. The question turns on which party's employees or agents delivered Universal's products into Missouri. A defendant who neither ships products into nor orders products

4

from Missouri has not transacted business with the state, but a defendant who agrees to ship its products into Missouri and subsequently honors that agreement has transacted business. See Dairy Farmers of America, Inc. v. Basset & Walker Intern., Inc., 702 F.3d 472 (8th Cir. 2012) (the defendant did not transact business within Missouri because it neither sent products into, ordered products from, nor advertised in Missouri); State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 667 S.W.2d 325 (Mo. banc 1984) (the defendant transacted business in Missouri by shipping materials into the state). A party ships products when its employees or agents, including carriers paid for by the party, move products from one party to another. Id. at 326 (citing Brown v. Park Transp. Co., 382 S.W.2d 467 (Mo. App. 1964)).

It is uncontested that Universal accepted purchase orders sent by Mighty Good on May 22, 2020 and June 1, 2020. Those orders show Universal's products were to be shipped to Mighty Goods in Clinton, Missouri. Universal contests that Mighty Good agreed to pick up the products in Michigan. Doc. No. 28-1 at 1. Mighty Good contests that the products were to be air freighted into Missouri but does not specify by whom. Doc. No. 29 at 2.

Universal's affidavits assert that Mighty Good assumed full responsibility for picking the pumps up from Michigan, and that Mighty Good did retrieve the pumps from Michigan. Doc. No. 22-1 at 2-3; Doc. No. 28-1 at 1.

Mighty Good submitted bills of lading to the Court which confirm Universal's assertions. Some of these bills of lading show that products were to ship from Universal GP Products, LLC in Warren, Michigan to Champion Brands in Clinton, Missouri. Doc. No. 29-2 at 1, 4. The carriers for these products were Dohrn Transfer and Old Dominion

Freight, and freight charges were billed to Logistic Resource Group in Overland Park, Kansas. Id. Other receipts show that products were to ship from Universal in Warren, Michigan to Southwest Manufacturing Partners in Plano, Texas. Id. at 5-8. The carrier for these products was Landstar Ranger, and freight charges were billed to Mighty Good c/o Redstone Logistics. Id. Mighty Good c/o Redstone Logistics and Logistic Resource Group, who paid for these carriers to send Universal's products into Missouri and Texas, have the same address and are, presumably, the same party.

It is clear to the Court that Mighty Good paid for the carrier services that transported Universal's products out of Michigan and into Missouri. The carriers Mighty Good paid for were agents of Mighty Good; therefore, Mighty Good made the deliveries. Because Universal did not, through its employees or agents, deliver its products into Missouri, it did not transact business in Missouri.

  ii. §506.500.1(2): Making a Contract

A corporation that makes any contract within Missouri is subject to the jurisdiction of Missouri courts as to any cause of action arising from such contract. Mo.Rev.Stat. §506.500.1(2).

Universal argues that "for purposes of the long-arm statute, a contract is made where acceptance occurs." Doc. No. 22 at 6 (citing Cepia v. Universal Pictures Visual Programming Ltd., 177 F.Supp.3d 1129, 1140 (E.D. Miss. 2016)). Universal asserts it accepted Mighty Goods' purchase orders in Michigan. Id.

Mighty Good simply argues that its claims arise "from the making of a contract in Missouri that resulted in injury in Missouri." Doc. No. 17 at 1. Mighty Good seemingly abandons its argument that Universal made a contract in Missouri, as it does not address

6

the argument any further.

For purposes of the present analysis, a contract is made where acceptance occurs. State ex rel. Career Aviation Sales, Inc. v. Cohen, 952 S.W.2d 324, 326 (Mo. App. E.D. 1997). Universal agreed to Mighty Goods' purchase orders in Michigan; Mighty Good offers no facts to the contrary. The contract was created in Michigan.

### iii. §506.500.1(3): Committing a Tort

For the purposes of the personal jurisdiction analysis, a plaintiff need only make a prima facie showing that a tort occurred. Fed. R. Civ. P. 12(b)(2). "Extraterritorial acts that produce consequences in the state" are tortious acts that satisfy this long-arm statute. Doohan v. CTB Inv., LLC, 427 F.Supp.3d 1034, 1044 (W.D. Mo. 2019) (citing Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d at 323).

Mighty Good alleges Universal made false representations regarding its access and ability to provide pumps, that these representations were material, and that Mighty Good relied on these representations in deciding to order pumps from Universal. Doc. No. 17 at 5-6. Mighty Good alleges it was ultimately damaged as a result of relying on these representations. Doc. No. 23 at 3. Mighty Good alleges that because Universal did not provide the pumps it said it would provide, Mighty Good was forced to incur additional costs. Doc. No. 17 at 3.

Universal argues Mighty Good's fraudulent inducement claim fails as a matter of law because the claim is not pled with particularity pursuant to Federal Rule of Civil Procedure 9(b) and because it is duplicative of Mighty Good's breach of contract cause of action. Doc. No. 22 at 11. At present, the Court is deciding only whether it has personal jurisdiction over this action. The Court need not decide whether Mighty Good's fraudulent

inducement claim fails as a matter of law to complete its personal jurisdiction analysis.

Resolving factual disputes in Mighty Goods' favor, the Court finds that Mighty Good satisfies this prong of Missouri's long-arm jurisdiction statute. Universal's extraterritorial act of allegedly misrepresenting its ability to provide specific pumps to Mighty Good produced consequences in Missouri – Mighty Good was saddled with allegedly nonconforming products in the state.

Satisfaction of this singular prong does not guarantee the establishment of personal jurisdiction. The Court must now consider whether asserting personal jurisdiction in this case would violate due process. Eagle Tech v. Expander Americas, Inc., 783 F.3d 1131, 1136 (8th Cir. 2015).

### B. Constitutional Due Process

The Court may not exercise personal jurisdiction over Universal unless it finds that Universal has minimum contacts with Missouri and purposefully availed itself to the consequences of this state. Int'l Shoe Co. v. State of Wash., 326 U.S. at 317, 66 S. Ct. 154; J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. at 880, 131 S. Ct. 2780.

Due process prohibits maintenance of a suit that offends "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. at 316, 66 S. Ct. 154. Due process requires that Universal reasonably anticipated being "haled into court" in Missouri when it was interacting with Mighty Good. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed.2d 490. When considering whether Universal reasonably anticipated being haled into court in this state, it is insufficient to rely on their "random, fortuitous, or attenuated contacts" or on Mighty Goods' "unilateral activity." Walden v. Fiore, 571 U.S. 277, 286, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014).

8

The Court's exercise of jurisdiction must be based on Universal's intentional conduct. Id.

The following five factors are weighed to determine whether a defendant has minimum contacts with a forum state and has purposefully availed itself to the consequences of that state: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. Burlington Indus. Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). The first three factors are most heavily weighed. Id. Considering these factors, the Court finds that the due process requirements have not been met.

### i. Factors 1 & 2: The Nature, Quality, and Quantity of Contacts with Missouri

Mighty Good argues that factors one and two favor jurisdiction because, as it alleges, "Defendant promised to provide 5.5 million products that it knew would be received at a facility in Clinton, Missouri." Doc. No. 23 at 8.

Universal argues that "simply entering into a contact with a company that conducts business in Missouri does not create minimum due process contacts." Doc. No. 22 at 15 (citing Fastpath, Inc. v. Arbela Tech. Corp., 760 F.3d 816, 812 (8th Cir. 2014)). Further, Universal claims to have no employees, agents, offices, or property in Missouri, and denies ever advertising, soliciting business in, or visiting Missouri. Nor did Universal create or perform the disputed contract in Missouri.

Personal jurisdiction cannot turn simply on the fact that Universal contracted with a Missouri corporation. Burger King v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2147, 85 L.Ed.2d 528 (1985). Nor can it turn on the fact that Universal could foresee itself causing injury in Missouri. Id. at 474 (citing World-Wide Volkswagen Corp. v. Woodson,

9

444 U.S. at 295, 100 S. Ct. 559). Rather, the Court must consider whether Universal purposefully availed itself of conducting activities in Missouri. Id. at 475 (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958)). To make this determination, The Court considers prior negotiations between the parties, the terms of the agreement, the parties' actual course of dealing, and its contemplated future consequences. Burger King v. Rudzewicz, 471 U.S. at 478-79, 105 S. Ct. 2174.

Considering these factors, the Court finds that the nature, quality, and quantity of Universal's contact with Missouri is too far attenuated for a finding of purposeful availment. Mighty Goods' prior negotiations were enumerated in the purchase orders and bills of lading. Those documents show that Universal intended for approximately five million of its products to end up in Missouri and that Mighty Good would deliver the products into Missouri. The documents do not show that Universal intended to, at any point, enter Missouri and conduct business in the state, or have an ongoing relationship with Mighty Good in Missouri. The terms of agreement between the parties were also enumerated in the two purchase orders. Universal and Mighty Good never negotiated or contracted together before the present events, so there are no actual courses of dealing between the two for the Court to consider. The Court can only consider the parties' course of performance, which shows that Mighty Good retrieved products from Michigan and was to pay a Michigan company for those products. Similarly, there are no contemplated future consequences for the Court to consider, as neither party has claimed they sought to work together beyond performance of the present contract. Factors one and two considered, Universal did not purposefully avail itself of conducting activities in Missouri.

    **ii.**  **Factor 3:  The Relation of the Cause of Action to the Contacts**

The Court considers the relationship between Mighty Goods' causes of action and Universal's contacts with Missouri. "Due process only requires the cause of action to arise out of or relate to a defendant's contacts with the forum state." Doohan v. CTB Investors, LLC, 427 F.Supp.3d at 1048 (citing Johnson v. Arden, 614 F.3d 785, 795 (8th Cir. 2010)).

There is an attenuated connection between Mighty Goods' causes of action and Universal's contact with Missouri. Universal's contact with Missouri is that its products ended up in Missouri; Mighty Goods' causes of action stem from being saddled with those products after Universal allegedly breached its contract. The causes of action do not arise out of Universal's products ending up in Missouri, but they are scantly related because Universal knew its products would end up in Missouri. Mighty Good argues that for these reasons, and because the "transactions and the representations associated therewith" are at issue and give rise to their action, jurisdiction is proper. Doc. No. 23 at 8.

This argument appears to rely on the "stream of commerce" theory often cited when injuries are tortious in nature. This theory states that jurisdiction is proper if a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased in the forum State." Id. at 297. This theory also states that jurisdiction is not unreasonable if a manufacturer's defective merchandise is the source of injury to those within the forum state. Id.

Here, Universal could not have expected its product to be purchased by consumers in Missouri, as its product was not for sale to the public. Nor did the injury suffered by Mighty Good result from the use or consumption of Universal's product. The damage to Mighty Good was more contractual than tortious in nature.

The contractual equivalent to the "stream of commerce" theory is that parties who

11

"reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other [s]tate for the consequences of their activities. Burger King Corp. v. Rudzewicz, 471 U.S. at 473, 105 S. Ct. 2174 (citing Traveler's Health Assn. v. Virginia, 339 U.S. 643, 647, 70 S. Ct. 927, 929, 94 L.Ed. 1154 (1950); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222 – 223, 78 S. Ct. 199, 200-201, L.Ed.2d 223 (1957)). Universal did not reach out beyond Michigan into Missouri to create a continuing relationship with Mighty Good. Rather, Mighty Good reached into Michigan for what appears to be temporary assistance and Universal responded.

Universal's only contact with Missouri is that it knew its products would end up in the state. Factor three considered, Universal did not purposefully avail itself of Missouri.

### iii. Factors 4 & 5: The Interest of the Forum State in Providing a Forum to its Residents & Convenience of the Parties

Mighty Good argues that because it was injured in Missouri, Missouri has an interest in providing a forum. Doc. No. 23 at 8. Universal argues that it would be inconvenient to be haled into court in Missouri, and that Mighty Good can be made just as whole in Michigan. Doc. No. 22 at 18-19.

States have a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. at 223, 78 S. Ct. 199). Even so, Universal has no employees, agents, or offices in Missouri. It neither solicited business, nor created or performed a contract within Missouri. A finding of personal jurisdiction would be unfairly inconvenient to Universal.

## IV. Conclusion

For the reasons stated above, the Court grants Universal's motion to dismiss for

lack of personal jurisdiction. Doc. No. 22. The Court denies Mighty Goods' request for jurisdictional discovery.

**IT IS SO ORDERED.**

Date:  November 22, 2021                               */s/ Fernando J. Gaitan, Jr.*
Kansas City, Missouri                                       Fernando J. Gaitan, Jr.
                                                                       United States District Judge