UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN (DETROIT) DIVISION

| | |
|---|---|
| MIGHTY GOOD SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> -v- <br><br> UNIVERSAL GP PRODUCTS, LLC, <br><br> Defendant. | CASE NO. 2:22-CV-11153-DPH-KGA <br><br> HON. DENISE PAGE HOOD <br> MAG. HON. ELIZABETH STAFFORD |

| | |
|---|---|
| MILLER CANFIELD <br> JEFFREY ALAN CRAPKO (P78487) <br> *Attorneys for Plaintiff* <br> 150 W. JEFFERSON AVE STE 2500 <br> DETROIT, MI 48226 <br> 248-267-3237 <br> FAX: 248-879-2002 <br> CRAPKO@MILLERCANFIELD.COM <br><br> CARMODY MACDONALD P.C. <br> MEGHAN M. LAMPING (59987MO) <br> BRANDON S. STEIN (73707MO) <br> *Attorneys for Plaintiff* <br> 120 SOUTH CENTRAL AVE STE 1800 <br> ST. LOUIS, MISSOURI 63105 <br> (314) 854-8600 <br> FAX 314-854-8660 <br> MML@CARMODYMACDONALD.COM <br> BSS@CARMODYMACDONALD.COM | WOOD KULL HERSCHFUS OBEE & KULL, PC <br> BRIAN H. HERSCHFUS (P41567) <br> *Attorneys for Defendant* <br> 37000 GRAND RIVER AVE STE 290 <br> FARMINGTON HILLS, MI 48335 <br> 248-476-2000 <br> FAX: 248-476-3660 <br> BHH@WOODKULL.COM |

**DEFENDANT UNIVERSAL GP PRODUCTS, LLC'S
MOTION TO DISMISS**

# EXHIBIT 7


Cited
As of: September 12, 2022 9:01 PM Z

# Allen v. Chrysler Group Llc

Court of Appeals of Michigan

March 23, 2010, Decided

No. 284687

**Reporter**
2010 Mich. App. LEXIS 741 *; 2010 WL 1052281

LORIE ALLEN, Plaintiff-Appellant, v CHRYSLER GROUP LLC, f/k/a DAIMLERCHRYSLER CORPORATION, and MOUNT CLEMENS DODGE, INC, Defendants-Appellees.

**Notice:** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**Prior History:** [*1] Macomb Circuit Court. LC No. 2007-000745-NZ.

## Core Terms

inspection, trial court, disclaimer, repair, warranty, summary disposition, buyer, defendants', lemon law, conspicuous, seller, revocation of acceptance, argues, notice, spoliation of evidence, selling, damages, Module, e-mail, trial court's decision, capital letters, remaining claim, third party, destroyed, deprived, parties, presale, revoked, plaintiff's claim, implied warranty

**Judges:** Before: HOEKSTRA, P.J., and BECKERING and SHAPIRO, JJ.

## Opinion

PER CURIAM.

Plaintiff appeals as of right the trial court's March 17, 2008, order granting summary disposition to defendant Mount Clemens Dodge, Inc. ("Mount Clemens"), granting partial summary disposition to defendant Chrysler Group LLC, formerly known as DaimlerChrysler Corporation ("Daimler"),[1] and dismissing the remainder of plaintiff's counts for spoliation of the evidence. Affirmed in part, reversed in part, and remanded.

I. FACTS AND PROCEDURAL HISTORY

This case arises out of the sale of a new 2006 Dodge Durango manufactured and warranted by Daimler and sold to plaintiff on March 28, 2006 by Mount Clemens. A few weeks before plaintiff purchased the vehicle, Mount Clemens reprogrammed a control module pursuant to a recall. At her deposition, plaintiff testified that after she purchased the vehicle, it did not operate well. On occasion, the ignition "stuck," the vehicle remained stationary when put into reverse, [*2] shifted hard, and would "make a slight hesitation just out of the blue driving." Between July 2006 and October 2006, plaintiff presented the vehicle for repair on at least four occasions. On each occasion, plaintiff took the vehicle to either Marco Superstore or Bollinger's, Inc. ("Bollinger's"), Daimler dealerships.

In December 2006, plaintiff sent a letter to Daimler's Customer Service Center, stating:

> My 2006 Dodge Durango has been in for service on at least 3 occasions for a defective condition with the transmission and related components. The dealership has also put a recorder on the vehicle, but these problems are still occurring even after a total of 4 trips to the dealership for repairs.
> I am initiating contact with you so that we can address the concerns I have with your product. I would like to start by scheduling a final repair attempt that will hopefully lead to my vehicle finally being fixed. Please contact me upon receipt of this letter.

In January 2007, plaintiff again took the vehicle to Bollinger's for repair. On the same day, a Daimler warranty representative went to Bollinger's. According to the service manager at Bollinger's, the representative came pursuant to the "lemon [*3] law letter" sent to Daimler by plaintiff, "became involved with the inspection of the vehicle," "took responsibility of the decision regarding whether to make a

---

[1] During these proceedings, Chrysler Group LLC was substituted as defendant-appellee in place of Chrysler LLC. Chrysler LLC was formerly known as DaimlerChrysler Corporation.

Case 2:22-cv-11153-DPH-KGA ECF No. 8-8, PageID.110 Filed 09/12/22 Page 3 of 10

Page 2 of 9
2010 Mich. App. LEXIS 741, *3

repair attempt," and advised the manager "not to install the parts ordered for the vehicle unless the concerns or condition could be duplicated at that time." Plaintiff's complaints could not be duplicated and the new parts were not installed.

Plaintiff filed suit against defendants on February 16, 2007, alleging: (I) violation of the new motor vehicle warranties act (the "lemon law"), MCL 257.1401 *et seq.*; (II) breach of contract; (III) violation of the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 *et seq.*; (IV) violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; (V) breach of written warranty under the Magnuson-Moss warranty act (Magnuson-Moss), 15 USC 2301 *et seq.*; (VI) breach of implied covenant of good faith and fair dealing; (VII) revocation of acceptance; (VIII) breach of implied warranty under Magnuson-Moss; (IX) breach of express warranty under Michigan's Uniform Commercial Code (UCC), MCL 440.2101 *et seq.*; and (X) breach of implied warranty of merchantability under the UCC.

On [*4] May 1, 2007, defendants sent plaintiff's counsel a request to produce the vehicle for inspection by an expert. On May 9, plaintiff's counsel sent defendants' counsel an e-mail, stating, in part:

> I have received your discovery regarding Lorie Allen v DaimlerChrysler. When we first spoke about this case about 2 weeks ago, you had asked me about inspecting the vehicle and I advised you that my client is available to provide the vehicle for inspection at any time. I note that your Request for Production requests that the vehicle be produced for inspection, but without a specific date. To that end, I ask that you set up the inspection as soon as possible. . . .

In a series of e-mails in May and June 2007, the attorneys for the parties exchanged e-mails regarding the requested vehicle inspection. Plaintiff's counsel indicated that plaintiff was no longer driving the vehicle and had purchased another used car to drive, but would make the vehicle available for inspection. The attorneys were attempting to arrange a time and location for the inspection that was agreeable to both parties.

At her June 13, 2007, deposition, plaintiff testified that she had traded the vehicle in at Philips Ford ("Philips"), [*5] and that Philips had already sold it. Defendants assert that plaintiff's deposition was the first time they heard of her selling the vehicle. It is undisputed that plaintiff sold the vehicle to Philips on May 7, 2007. At the time of the sale, plaintiff did not disclose any problems with the vehicle. Philips performed an inspection of the vehicle and noted that it was in good condition. Philips sold the vehicle in early June. The new owner subsequently brought the vehicle in for repairs unrelated to the transmission/drivetrain.

In an e-mail dated August 9, 2007, plaintiff's counsel indicated to defendants' counsel that defendants were responsible for locating the vehicle and conducting an inspection, if they deemed it necessary. The e-mail stated, in part:

> Furthermore, the Ford dealer was advised to hold the vehicle for your inspection, for which I sent you several e-mails indicating that she had purchased another vehicle and urged you to do an inspection for over a month. Apparently, the dealer grew tired of waiting and had a willing buyer. In any event, your client had the opportunity to inspect and attempt repairs on the vehicle on the multiple visits to the dealership, during which [*6] DaimlerChrysler was contacted as indicated in the repair orders. . . .
> As you have access to the warranty history of the subject vehicle, and have admitted that the current owner already brought the vehicle in for a repair, you know [sic] doubt have the new owner's name and address. If you do not, I will obtain it for you, so that you can schedule your inspection if you really feel it is necessary at this point. . . .

On September 5, 2007, defendants moved for summary disposition of plaintiff's claims under MCR 2.116(C)(8) and (C)(10). Defendants contended, among other things, that plaintiff could not establish that a defect continued to exist under the lemon law because she had sold the vehicle, and therefore, could not produce it for inspection. At the hearing on defendants' motion, the trial court asked numerous questions about plaintiff's alleged spoliation of the vehicle, and took the motion under advisement. On January 14, 2008, defendants filed a motion to dismiss and for evidentiary sanctions, arguing that their defense to each of plaintiff's claims was dependant to at least some degree on evidence gathered from inspection of the vehicle and that the court should dismiss the [*7] case as a sanction for plaintiff's disposal of the vehicle, or in the alternative, impose another just sanction. After hearing the parties' arguments on the motion, the court again took the case under advisement.

The trial court issued an opinion and order on March 17, 2008. The court dismissed two counts, count I (lemon law) and count VI (implied covenant of good faith and fair dealing) because plaintiff stipulated to their dismissal. It granted defendants summary disposition of count II (breach of contract) because it was redundant of count IX (express warranty), and granted Mount Clemens summary disposition of count III (MVSRA) because plaintiff presented no evidence of causation or damages. In regard to count IV (MCPA) and counts V and VIII (Magnuson-Moss), the court granted Mount Clemens summary disposition because it

Case 2:22-cv-11153-DPH-KGA ECF No. 8-8, PageID.111 Filed 09/12/22 Page 4 of 10

Page 3 of 9
2010 Mich. App. LEXIS 741, *7

disclaimed any express or implied warranties, but found that a genuine issue of material fact existed regarding whether Daimler breached its warranty. The court granted defendants summary disposition of count VII (revocation of acceptance) because plaintiff continued to drive the vehicle after she filed this action. It granted Mount Clemens summary disposition of [*8] count IX (express warranty) and count X (implied warranty of merchantability) because it disclaimed any warranties, but found that a genuine issue of material fact existed in regard to plaintiff's warranty claims against Daimler. Ultimately, the court dismissed plaintiff's remaining claims against Daimler (counts IV, V, VIII, IX, and X) on the grounds of spoliation of evidence, because by selling the vehicle without any notice to defendants, she had deprived them of the ability to inspect the vehicle and rebut her claim that it was defective.

Plaintiff now appeals as of right.

II. DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all of the substantively admissible evidence submitted by the parties in the light most favorable to the nonmoving party and summary disposition is appropriate only when the evidence fails [*9] to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 119-120; MCR 2.116(G)(6).

B. REVOCATION OF ACCEPTANCE

Plaintiff argues that the trial court erred in granting Mount Clemens summary disposition of her revocation of acceptance claim. We disagree. Plaintiff's failure to give Mount Clemens notice of the sale of the vehicle rendered her revocation ineffective.

Under Michigan law, revocation of acceptance of goods is governed by MCL 440.2608, which provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
> * * *
> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. [2]

> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as [*10] if he had rejected them.

MCL 440.2602 governs the rejection of goods and provides, in part:

> (2) Subject to the provisions of the 2 following sections on rejected goods (sections 2603 and 2604),
> (a) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and
> (b) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this article (subsection (3) of section 2711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but
> (c) the buyer has no further obligations with regard to goods rightfully rejected.

MCL 440.2711 states the remedies of a buyer. It provides, in part: "On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (section 2706)." MCL 440.2711(3).

The trial court held that plaintiff's revocation of acceptance was ineffective because of her continued use of the vehicle under the circumstances of the case. We hold, however, that plaintiff's failure to give Mount Clemens notice of the sale of the vehicle, in violation of her duties under MCL 440.2711 and 440.2706, rendered her revocation ineffective. MCL 440.2602(2)(a) states that after rejection, which is synonymous with revocation in this context under MCL 440.2608(3), "any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." Plaintiff is correct that a revoking buyer may resell goods. But the sale must be conducted in a commercially reasonable manner and in the case of a private sale, the buyer

---

[2] Serving [*11] the seller with a complaint may serve as notice of the buyer's revocation of acceptance. *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 211; 457 NW2d 42 (1990).

Case 2:22-cv-11153-DPH-KGA ECF No. 8-8, PageID.112 Filed 09/12/22 Page 5 of 10

Page 4 of 9
2010 Mich. App. LEXIS 741, *11

must give the seller reasonable notification of his or her intention to sell. As indicated, under MCL 440.2711(3), a revoking "buyer . . . may hold such goods and resell them in like manner as an aggrieved seller (section 2706)." MCL 440.2706 governs resales by sellers, [*12] and provides that "every aspect of the sale including method, manner, time, place and terms must be commercially reasonable." MCL 440.2706(2). MCL 440.2706(3) provides that where "the resale is at a private sale the seller [buyer] must give the buyer [seller] reasonable notification of his intention to resell." In this case, plaintiff failed to inform Mount Clemens of her intent to sell the vehicle. In fact, Mount Clemens did not learn that she had sold the vehicle until more than a month after the fact, and after the vehicle had already been resold by the dealership to a new owner. By failing to provide the requisite notification to Mount Clemens, plaintiff acted in a manner inconsistent with her revocation of acceptance and Mount Clemens' ownership, thereby rendering her revocation ineffective. We affirm the trial court's award of summary disposition to Mount Clemens of plaintiff's revocation of acceptance claim on that ground.

C. MVSRA

Plaintiff argues that the trial court erred in grating Mount Clemens summary disposition of her MVSRA claim. We disagree.

Under the MVSRA, any facility that violates the act or "engages in an unfair or deceptive method, act, or practice, is liable as [*13] provided in this act to a person who suffers damage or injury as a result thereof . . . ." MCL 257.1336. Plaintiff argues that Mount Clemens violated MCL 257.1336 by failing to inform her of the presale safety recall repair it made to the vehicle. In her brief on appeal, plaintiff asserts that "the repair performed to the powertrain Control Module by Defendant, Mt. Clemens Dodge, relates to the problems complained of by Plaintiff each time she brought it in for service, and was the subject of warranty repair work at least twice later on." In granting Mount Clemens summary disposition of this claim, the trial court found that plaintiff failed to proffer "any evidence establishing that the repair was not properly performed and/or is related to the alleged ongoing transmission/drivetrain problem," and therefore, "failed to establish proximate causation and damages as a result of the alleged unfair or deceptive act or practice."

Plaintiff is correct that Mount Clemens failed to inform her of its presale safety recall repair to the vehicle. That is an undisputed fact. Nonetheless, we agree with the trial court that Mount Clemens was entitled to summary disposition of this issue. Regardless [*14] whether Mount Clemens had a duty to disclose the safety recall repair to plaintiff at the time of purchase, plaintiff has failed to present evidence creating a material question of fact as to causation and damages.

Approximately three weeks before plaintiff purchased the vehicle, Mount Clemens reprogrammed a control module in the vehicle pursuant to a recall. Plaintiff states in her brief on appeal that Mount Clemens "Flashed Powertrain Control Module per recall." According to defendants, however, Mount Clemens "performed a programming upgrade to the Vehicle's Compartment Cabin Node Control Module ("CCN")," which "controls instrument cluster ambient temperature display accuracy." The repair order is not entirely legible, but apparently states that Mount Clemens "Flashed CCN . . . per recall." The warranty claim report indicates that pursuant to a recall, recall "F08" in particular, Mount Clemens inspected and reprogrammed the "Compartment Cabin Node (CCN) Control Module."

Although plaintiff asserts on appeal that Mount Clemens repaired the vehicle's powertrain control module, the evidence of record does not support such an assertion. The record indicates that Mount Clemens reprogrammed [*15] the CCN. Moreover, plaintiff has not presented any evidence--other than her own conjecture--establishing that the presale safety recall repair had any connection to her subsequent complaints about the vehicle, which were focused on the transmission and related components, or that she suffered any damages as a result of Mount Clemens' failure to disclose the presale repair. Although substantively admissible evidence submitted at the time of a motion for summary disposition must be viewed in the light most favorable to the party opposing the motion, the nonmoving party must come forward with at least some evidentiary proof, some statement of specific fact, upon which to base his or her case. *Maiden*, 461 Mich at 120-121; *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Because plaintiff has failed to produce any evidence as to causation and damages, we affirm the trial court's award of summary disposition to Mount Clemens of her MVSRA claim.

D. MCPA

Plaintiff argues that the trial court erred in granting Mount Clemens summary disposition of her MCPA claim. Again, we disagree.

According to plaintiff, Mount Clemens acted in an unfair, unconscionable, or deceptive manner under [*16] MCL 445.903(1) by failing to inform her of the presale safety recall repair it made to the vehicle. But the trial court did not address the merits of plaintiff's MCPA claim. Rather, in granting Mount Clemens summary disposition of the claim, the court stated:

> As a preliminary matter, plaintiff's Michigan Consumer Protection Act ("MCPA") claim alleges unlawful, unfair,

unconscionable, or deceptive methods, acts, or practices in conduct related to the sale of the vehicle rather than its repair.

. . .

With respect to plaintiff's warranty arguments, defendant Mount Clemens Dodge disclaimed an express or implied warranties with respect to the sale of the vehicle to plaintiff. Hence, defendant Mount Clemens Dodge could not have possibly engaged in unfair or deceptive conduct if the warranty failed to provide any promised benefits.

* * *

Accordingly, only defendant Mount Clemens Dodge is entitled to summary disposition of Count IV of plaintiff's complaint.

The trial court was correct to the extent that plaintiff could not establish a warranty-based MCPA claim if Mount Clemens did, in fact, properly disclaim all warranties. "A vehicle purchaser cannot assert a claim against the seller alleging a [*17] violation of the MCPA based on warranty-related representations when the seller made no express or implied warranties." *Harnden v Ford Motor Co*, 408 F Supp 2d 309 (ED Mich, 2005), citing *Marshall v Meade Group, Inc*, unpublished opinion per curiam of the Court of Appeals issued January 11, 2002 (Docket No. 224815), among other cases. But, as explained hereinafter, Mount Clemens did not properly disclaim all warranties. Therefore, the basis of the trial court's decision regarding plaintiff's MCPA claim was incorrect.

However, as explained above, plaintiff failed to present evidence creating a material question of fact that the presale safety recall repair Mount Clemens made to the vehicle had any connection to her subsequent complaints about the vehicle, or that she suffered any damages as a result of Mount Clemens' failure to disclose the repair. We affirm the trial court's decision in regard to plaintiff's MCPA claim on that ground.

E. PLAINTIFF'S WARRANTY CLAIMS

Plaintiff argues that the trial court erred in granting Mount Clemens summary disposition of her breach of warranty claims on the basis that Mount Clemens properly disclaimed all warranties. [3] We agree.

In our review of the record, we found disclaimer language on three documents presented by the parties. In moving for summary disposition, defendants presented two documents signed by plaintiff containing identical disclaimer language, the "Statement of Vehicle Sale" form and the "Application for Michigan Title & Registration" form. On appeal, defendants present what is alleged to be the second page of a "Vehicle Purchase Agreement" form, which contains different disclaimer language. According to plaintiff, defendants presented the alleged second page of the agreement for the first time on appeal. [4] We were not able to locate this alleged second page in the lower court file, the trial court did not refer to it in granting Mount Clemens summary disposition, and as plaintiff points out, the fax information on the bottom of the page indicates that it was not sent to defendants' counsel by Mount Clemens until June 2008. Because [*19] there is no indication that the document was part of the record below, we will not now consider it. [5] See *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 18; 527 NW2d 13 (1994).

The "Statement of Vehicle Sale" and "Application for Michigan Title & Registration" forms contain an identical disclaimer provision--in what appears to be six point font [6]-- that states:

**REMARKS**:

---

[3] The trial court dismissed [*18] five counts as to Mount Clemens on the basis that it properlydisclaimed all warranties: Count IV (MCPA claim), which we addressed above, Counts V and VIII (Magnuson-Moss claims), Count IX (express warranty claim), and Count X (implied warranty of merchantability claim).

[4] Plaintiff filed a motion to strike defendants' appellate brief and exhibits. This Court denied plaintiff's motion, stating that if defendants' brief "refers to documents that are not part of the record on appeal, plaintiff should inform the court of that fact in her reply brief and this Courtmay then disregard any improper attempt to enlarge the record." *Allen v DaimlerChrysler Corp*, unpublished order of the Court of Appeals entered August 21, 2008 (Docket No. 284687).

[5] Additionally, we note that the signature line on the bottom of the page is unsigned and there is nothing on the page indicating that it was included with the first page of the "Vehicle PurchaseAgreement" form, which was signed by plaintiff, at the time of purchase.

[6] In six point font, the disclaimer appears as follows:

**REMARKS**:

> The Seller, MOUNT CLEMENS DODGE, Inc., hereby expressly disclaims all Warranties, either express or implied including any implied Warranty of merchantability or fitness for a particular purpose, neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle. This disclaimer by the Seller in no way affects the terms of the Manufacturer's Warranty. Buyer shall not be entitled to recover from the Selling Dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental [*21] damages.

Case 2:22-cv-11153-DPH-KGA ECF No. 8-8, PageID.114 Filed 09/12/22 Page 7 of 10

Page 6 of 9
2010 Mich. App. LEXIS 741, *21

The Seller, MOUNT CLEMENS DODGE, Inc., hereby expressly disclaims all Warranties, either [*20] express or implied including any implied Warranty of merchantability or fitness for a particular purpose, neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle. This disclaimer by the Seller in no way affects the terms of the Manufacturer's Warranty. Buyer shall not be entitled to recover from the Selling Dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

Plaintiff argues that Mount Clemens' disclaimer language is ineffective because it is not conspicuous. See MCL 440.2316. MCL 440.1201(10) defines "[c]onspicuous" in this way:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

Comment 10 to MCL 440.1201 states the test for conspicuousness is "whether attention can reasonably be expected to be called to it."

In *Davis v LaFontaine Motors, Inc*, 271 Mich App 68; 719 NW2d 890 (2006), this Court found the disclaimer at issue conspicuous. The Court explained:

We find that the disclaimer is conspicuous. On the first page of the vehicle purchase order, which both plaintiffs signed, there is a heading entitled "IMPORTANT BUYER INFORMATION." In capital letters within that paragraph, it states, "SEE PARAGRAPH 10 ON REVERSE SIDE." Paragraph 10 includes [*22] a heading in capital letters stating "WARRANTY DISCLAIMER." In her deposition, Cook-Davis admitted that she read and understood the disclaimer language. Therefore, we conclude that there is no genuine issue of fact with regard to whether the disclaimer of implied warranties was conspicuous. [*Id*. at 77.]

See also *Mallory v Conida Warehouses, Inc*, 134 Mich App 28, 31-32; 350 NW2d 825 (1984) (holding that a disclaimer was not conspicuous where the tag containing the disclaimer stated "WARRANTY" in capital letters at the top, but the balance of the language was in standard type size, there was no contrasting color or particular emphasis on any portion of the disclaimer, the tag was not in a "particularly conspicuous location", given that it was under two other tags, and the tag was the least conspicuous writing on the bag); *McGhee v GMC Truck & Coach Div*, 98 Mich App 495, 498-499, 504; 296 NW2d 286 (1980) (holding that a disclaimer was conspicuous where the order form said "SOLD (AS IS)" in letters one-fourth inch tall and disclaimer language was printed in red on the reverse side of the page, and an additional document contained disclaimer language in bold).

In this case, the trial court [*23] found that the disclaimer was conspicuous, noting that plaintiff signed two documents including the disclaimer, that the disclaimer was located on the first page of each document, and that the title of the disclaimer section, "**REMARKS**", was in all capital letters and in bold. We disagree with the trial court. As plaintiff points out in her brief on appeal, the title "**REMARKS**" does not attract a reader's attention like the titles "IMPORTANT BUYER INFORMATION" and "WARRANTY DISCLAIMER" in *Davis*. Further, while the trial court correctly noted that the title was in all capital letters and in bold, it was in a font no larger than the fonts appearing on the rest of the page. Moreover, the disclaimer language beneath the title was not in all capital letters, bold, or a different color ink, and was in one of the smallest fonts on the page. Mount Clemens' disclaimer does not appear in a way that "a reasonable person against whom it is to operate ought to have noticed it" or that attention could "reasonably be expected to be called to it." MCL 440.1201(10) and comment 10. Therefore, the disclaimer was not conspicuous and we reverse the trial court's award of summary disposition to Mount Clemens [*24] on that basis.

F. THE LEMON LAW

Plaintiff argues that the trial court erred in dismissing her lemon law claim as to Daimler. We disagree.

In its opinion and order, the trial court dismissed plaintiff's lemon law claim as to both defendants pursuant to her stipulation. In her brief on appeal, plaintiff states that while she "does stipulate" to the dismissal of her lemon law claim as to Mount Clemens, she never stipulated to dismiss the claim as to Daimler. Plaintiff asserts that the trial court was either mistaken on this point, or misunderstood her argument at the hearing on defendants' motion for summary disposition. As defendants point out, however, in her response to defendants' motion for dismissal (filed long after oral arguments on defendants' motion for summary disposition), plaintiff stated, in part:

8. Plaintiff denies that Defendants are entitled to a dismissal of the entire case. Plaintiff will concede that the selling/trading of the vehicle waives her claim under the Michigan Lemon Law, which she is willing to voluntarily dismiss.

In her reply brief on appeal, plaintiff concedes that she did, in fact, make this statement in her response to defendants' motion, but asserts that [*25] she later revoked the stipulation because she had uncovered additional evidence. However, plaintiff has pointed to nothing in the record indicating that she ever actually revoked the stipulation, or even attempted to do so. Nor have we found anything in the lower court record so indicating. In fact, after stating that she was "willing to voluntarily dismiss" the lemon law claim in her response, plaintiff essentially abandoned the claim. The brief attached to plaintiff's response addressed all of her claims, except the lemon law claim, [7] and she made no reference to the claim at the hearing on defendants' motion for dismissal.

Additionally, plaintiff argues that her stipulation is unenforceable because the lemon law states that "[a]ny rights and remedies provided a consumer under this act may not be waived." MCL 257.1407(1). But this anti-waiver provision generally applies to a consumer's waiver of his or her rights in a purchase [*26] agreement or other pre-litigation agreement between the parties. See, e.g., *Abela v GMC*, 257 Mich App 513; 669 NW2d 271 (2003) (considering whether the lemon law's anti-waiver provision precludes a party from waiving his or her right to pursue legal action in an agreement requiring binding arbitration of disputes). Plaintiff has not presented any authority indicating that a party may not voluntarily dismiss his or her own lemon law claim after litigation has commenced. Accordingly, we affirm the trial court's dismissal of plaintiff's lemon law claim.

## III. DEFENDANTS' MOTION TO DISMISS FOR SPOLIATION OF EVIDENCE

Plaintiff argues that the trial court abused its discretion in dismissing her remaining claims against Daimler based on spoliation of the evidence. We agree.

When a party destroys or loses material evidence, whether intentionally or unintentionally, that it knows or should know is relevant to the case, and the other party is unfairly prejudiced because it is unable to challenge or respond to the evidence, a trial court has the inherent authority to sanction the culpable party to preserve the fairness and integrity of the judicial system. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). [*27] There is also a general rule that if a party intentionally destroys evidence that is relevant to a case, a presumption arises that the evidence would have been adverse to that party's case. *Ward v Consolidated Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005). A court's exercise of this inherent authority to impose sanctions may be disturbed only on a finding that there has been an abuse of discretion. *Brenner*, 226 Mich App at 160-161. If material evidence has been lost or destroyed by one party, the trial court must carefully fashion a sanction that denies that party the fruits of its misconduct, but that does not interfere with the party's right to produce other relevant evidence. *Bloemendaal v Town & Country Sports Ctr Inc*, 255 Mich App 207, 212; 659 NW2d 684 (2002). "Dismissal of a case is a drastic step. Before imposing such a sanction, the trial court must consider lesser sanctions." *Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 243; 635 NW2d 379 (2001) (citation omitted). Other possible sanctions include "the exclusion of evidence that unfairly prejudices the other party or an instruction that the jury may draw an inference adverse to the culpable party from [*28] the absence of the evidence." *Bloemendaal*, 255 Mich App at 212.

The trial court held that plaintiff failed to preserve relevant evidence by selling the vehicle to Philips and allowing Philips to sell the vehicle to a third party, all without any prior notice to defendants. The court held that plaintiff's actions deprived defendants of the opportunity to rebut her claim that the vehicle was defective and remained defective despite numerous repair attempts. On appeal, plaintiff argues that the trial court abused its discretion in dismissing her remaining claims against Daimler based on this alleged spoliation of the evidence. In so arguing, plaintiff essentially asserts that there was no spoliation of evidence because the vehicle was not lost or destroyed. But "spoliation may occur by the failure to preserve crucial evidence, even though the evidence was not technically lost or destroyed." *Id*. There is a legitimate question in this case whether spoliation occurred, and if it did occur, the degree of spoliation. [8] Defendants presented evidence indicating that when plaintiff sold the vehicle, Philips performed an inspection of the vehicle and noted that it was in good condition. The third [*29] party that later purchased the vehicle brought it in for repairs unrelated to the transmission/drivetrain problems complained of by plaintiff. There was, therefore, no indication that the components defendants intended to inspect to refute plaintiff's claims had been altered in any way, although we acknowledge that by selling the vehicle to a dealer and allowing it to be sold to a third party, plaintiff exposed the vehicle to possible alteration.

---

[7] The brief attached to plaintiff's response stated that "[c]urrently, the Plaintiff has the following claims" and then listed only her MCPA claim, her breach of express and implied warranty claims, and her MVSRA claim, as well as her "Right/Duty to Sell Goods."

[8] Plaintiff first informed defendants that she had sold the vehicle 37 days after she traded it in toPhillips and six days after Phillips sold the vehicle to a third party. [*30] Plaintiff maintains that the vehicle remained available for inspection while on the lot at Phillips, but defendants were unaware that plaintiff had traded in the vehicle and that their opportunity to inspect the vehicle in the future might be in jeopardy.

Further, while the trial court held that plaintiff deprived defendants of any opportunity to refute her claims as to the condition of the vehicle, plaintiff is correct that defendants could have pursued an inspection of the vehicle even after it had been sold to the third party. MCR 2.310(D)(1) provides that a request for the production of documents or other things may be served on a nonparty at any time. If the nonparty does not permit the items to be inspected, the party seeking the inspection may file a motion to compel the inspection under MCR 2.313(A). MCR 2.310(D)(4).

Assuming plaintiff's selling of the vehicle constituted spoliation of evidence, the sanction imposed by the trial court--dismissal of all of plaintiff's remaining claims--was too drastic a step under the circumstances, and therefore, inappropriate. We agree with defendants that plaintiff should have known the vehicle was relevant to the case given the nature of her claims and their repeated requests to inspect it. See *Brenner*, 226 Mich App at 160. Defendants' counsel was in frequent contact with plaintiff's counsel via e-mail in an attempt to arrange a time and place for an inspection that was agreeable to both parties. Plaintiff's counsel led defendants' counsel to believe, whether intentionally or unintentionally, that plaintiff was still in possession of the vehicle and that an inspection could be arranged. Plaintiff also failed to comply with her duty to notify defendants of her intent to sell the vehicle under MCL 440.2706. But [*31] defendants had access to all of the repair records related to the vehicle before its sale and at least some after the sale, and Daimler's warranty representative participated to at least some degree in Bollinger's January 2007 inspection of the vehicle that took place after Daimler had received plaintiff's final repair attempt letter and shortly before plaintiff filed suit. Moreover, defendants could have pursued an inspection of the vehicle even after it had been sold to the third party under MCR 2.310(D). Although the trial court stated in its opinion and order that there was "no meaningful lesser sanction other than prohibiting plaintiff from presenting any evidence as to the condition of the vehicle," which would necessitate dismissal of the case, the court did not articulate what lesser sanctions it had considered. See *Juno Lighting, Inc*, 247 Mich App at 243. Contrary to the trial court's blanket conclusion, given that the vehicle remained in existence we find that less drastic sanctions were available and appropriate to preserve the fairness and integrity of the judicial system. See *Brenner*, 226 Mich App at 160. For example, the trial court could have ordered that plaintiff track [*32] down the vehicle, arrange for defendants' inspection of the vehicle, pay defendants' costs associated with the delay in inspection and ascertainment of information regarding what repairs or modifications, if any, were made to the vehicle after its sale, and ordered the charging of an adverse inference instruction associated with the delay in inspection caused by plaintiff's actions. Unlike other types of cases where certain tangible evidence must be preserved and maintained for use at trial, plaintiff was not obligated, nor was it fiscally realistic, to require her to place her $ 36,000 vehicle in the garage pending the disposition of legal proceedings. While defendants were entitled to inspect the vehicle, and plaintiff's actions clearly hindered that opportunity, plaintiff did not destroy the evidence or otherwise render inspection impossible such that complete dismissal of plaintiff's claims would be warranted.

The trial court abused its discretion in dismissing all of plaintiff's remaining claims against Daimler on the basis of spoliation of the evidence. On remand, the court should impose the same or similar alternative lesser sanctions as those articulated above. [9]

IV. CONCLUSION

We affirm the trial court's award of summary disposition to Mount Clemens of plaintiff's revocation of acceptance, MCPA, and MVSRA claims, and affirm its dismissal of plaintiff's lemon law claim as to both defendants. We reverse the court's award of summary disposition to Mount Clemens of plaintiff's remaining breach of warranty claims, and reverse its dismissal of any remaining claims on the basis of spoliation of the evidence. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Jane M. Beckering

/s/ Douglas B. Shapiro

**Dissent by:** HOEKSTRA

## Dissent

HOEKSTRA, P.J., (*dissenting*.)

Because I conclude that the trial court did not abuse its discretion in dismissing plaintiff's claims for failure to preserve evidence, I respectfully dissent.

In this case, the trial court held:

    In the instant matter, plaintiff had not only

---

[9] This Court [*33] recognizes that due to the passage of time while plaintiff pursued her appeal, an inspection of the vehicle may be less helpful or even impossible; hence, certain discovery and an appropriately tailored adverse inference instruction may be all that is available.

Case 2:22-cv-11153-DPH-KGA ECF No. 8-8, PageID.117 Filed 09/12/22 Page 10 of 10

Page 9 of 9
2010 Mich. App. LEXIS 741, *33

 [*34] initiated litigation but was also aware--as evidenced by the repeated representations of her counsel that the vehicle was available for inspection--of defendants' request to inspect the Durango before she sold it. Inasmuch as every claim in this lawsuit challenges the ongoing condition of the vehicle, plaintiff clearly knew or should have known that the condition of the Durango would be material to this litigation. Plaintiff also should have been aware and had been put on actual notice of the need to preserve the vehicle in order to provide defendants' with an opportunity to inspect it. An inspection was necessary to give defendants the opportunity to obtain evidence to defend against plaintiff's allegations. Instead, by trading the vehicle in without providing any notice to defendants, plaintiff has deprived defendants of the opportunity to rebut her claim that the Durango was defective and remained defective despite numerous repair opportunities.

Significantly, plaintiff's lemon law letter, seeking repair of the vehicle, does not constitute notice of rejection or revocation. Notwithstanding, plaintiff's actions in trading the vehicle in (i.e., selling it) was an exercise of ownership [*35] that was wrongful against defendants. MCL 440.2602(2)(a). Moreover, the act of trading the vehicle in--without providing *any* notice to defendants--unjustly deprived defendants of the return of the vehicle or its value. MCL 440.2602(2)(b), 444.2603, 440.2604 and 440.2706.

Permitting plaintiff to proffer evidence of the alleged defective condition of the Durango, when plaintiff's actions have precluded defendant Chrysler from having the opportunity to refute such a claim, would create an injustice. There is no meaningful lesser sanction other than prohibiting plaintiff from presenting any evidence as to the condition of the vehicle that will remedy the harm caused by plaintiff's failure to preserve the Durango. Otherwise, plaintiff would be free to testify the vehicle was defective but defendant Chrysler would be prevented from obtaining and presenting evidence to contradict such testimony.

Inasmuch as all of plaintiff's remaining claims require proof that the Durango was and/or remained defective, preclusion of evidence of the alleged defective condition of the vehicle necessarily mandates dismissal of the remainder of plaintiff's complaint. While the result is harsh, this consequence [*36] is necessitated by plaintiff's own actions, which would otherwise deprive defendant Chrysler of a fair trial.

This Court reviews the sanctions imposed by a trial court for a party's failure to preserve evidence for an abuse of discretion.

*Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). A trial court abuses its discretion when it fails to select a reasonable and principled outcome. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). This standard recognizes that, in certain circumstances, there is no single correct outcome, and that as long as the trial court chooses a principled outcome, this Court must defer to the trial court's decision. *Id*.

The factual basis for the sanction is not in dispute. Plaintiff knew or should have known that she had the obligation to preserve the vehicle by keeping it in her possession. Yet, acting unilaterally and directly contrary to that obligation, she sold the vehicle. The trial court found that plaintiff's actions compromised defendants' right to a fair inspection of the vehicle and ordered dismissal. I do not find the trial court's decision to be outside the range of reasonable and principled outcomes. Even if, as the majority [*37] argues, the vehicle could be subsequently located and inspected, the transfer of possession of the vehicle to third parties naturally raises numerous issues regarding the credibility and reliability of a subsequent inspection. Plaintiff had the obligation to maintain possession of the vehicle until an inspection was completed. Her action in selling the vehicle compromised the integrity of the legal action that she initiated. The trial court's decision that plaintiff's actions warranted dismissal was easily within the range of principled outcomes. I would affirm. [1]

/s/ Joel P. Hoekstra

---

**End of Document**

---

[1] In its opinion and order, the trial court only dismissed as a sanction those claims against DaimlerChrysler Corporation that withstood the substantive challenges raised by defendants in their joint motion for summary disposition. However, as recognized by the parties at oral arguments, the sanction imposed by the trial court would require dismissal of all of plaintiff's claims against defendants. Consequently, having determined that the sanction imposed by the trial court was not abuse of discretion, I do not reach the merits of plaintiff's remaining arguments.