UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MIGHTY GOOD SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:22-cv-11153-DPH-KGA |
| | ) |
| | )     Hon. Denise Page Hood |
| v. | )     Mag. Hon. Elizabeth Stafford |
| | ) |
| UNIVERSAL GP PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |

---

Miller Canfield Paddock & Stone PLC
Jeffery Alan Crapko (P78487)
150 W. Jefferson Ave. Ste 2500
Detroit, MI 48226
Telephone (248) 267-3237
Facsimile: 248-879-2002
crapko@millercanfield.com

Carmody MacDonald P.C.
Tyler C. Schaeffer (60847MO)
Brandon S. Stein (73707MO)
120 South Central Ave., Suite 1800
St. Louis, MO 63105
Telephone (314) 854-8600
Facsimile (314) 854-8660
tcs@carmodymacdonald.com
bss@carmodymacdonald.com

*Attorneys for Plaintiff*

Wood Kull Herschfus Obee & Kull, PC
Brian H. Herschfus (P41567)
37000 Grand River Ave. Ste 290
Farmington Hills, MI 48335
248-476-2000
Fax: 248-476-3660
bhh@woodkull.com

*Attorneys for Defendant*

---

## **MIGHTY GOOD SOLUTIONS, LLC'S RESPONSE IN OPPOSITION TO UNIVERSAL GP PRODUCTS, LLC'S MOTION TO DISMISS**

Plaintiff Mighty Good Solutions, LLC ("Mighty Good"), by and through its attorneys, file its response in opposition to Universal GP Products, LLC's ("Universal") Motion to Dismiss.  Universal's motion should be denied because, accepting Mighty Good's pleadings as true, Mighty Good has stated claims for Breach of Contract, Fraudulent Inducement, and Unjust Enrichment, and applicable Michigan law and disputed fact questions prohibit summary judgment in Universal's favor on any of Mighty Good's claims.  In accordance with E.D. Mich. Local R. 7.1(c), Mighty Good submits its brief in support of its Response herewith.

WHEREFORE, Mighty Good respectfully requests this Court deny Universal's Motion and grant Mighty Good all other relief the Court deems fair and just.

Respectfully submitted,

MILLER CANFIELD PADDOCK & STONE PLC

By:     /s/Jeffrey A. Crapko
        Jeffery A. Crapko (P78487)
        150 W. Jefferson Ave. Ste 2500
        Detroit, MI 48226
        Telephone: (248) 267-3237
        Facsimile: (248) 879-2002
        crapko@millercanfield.com

1

CARMODY MACDONALD P.C.
Tyler C. Schaeffer, #60847MO
Branden S. Stein, #73707MO
120 S. Central Ave., Suite 1800
St. Louis, Missouri 63105
Telephone (314) 854-8600
Facsimile (314) 854-8660
tcs@carmodymacdonald.com
bss@carmodymacdonald.com

*Attorneys for Plaintiff*

Dated: October 3, 2022

39713181.1/161506.00001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MIGHTY GOOD SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-11153-DPH-KGA |
| | ) | |
| | ) | Hon. Denise Page Hood |
| v. | ) | Mag. Hon. Elizabeth Stafford |
| | ) | |
| UNIVERSAL GP PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | |
|---|---|
| Miller Canfield Paddock & Stone PLC | Wood Kull Herschfus Obee & Kull, PC |
| Jeffery Alan Crapko (P78487) | Brian H. Herschfus (P41567) |
| 150 W. Jefferson Ave. Ste 2500 | 37000 Grand River Ave. Ste 290 |
| Detroit, MI 48226 | Farmington Hills, MI 48335 |
| 248-267-3237 | 248-476-2000 |
| Fax: 248-879-2002 | Fax: 248-476-3660 |
| crapko@millercanfield.com | bhh@woodkull.com |
| | |
| Carmody MacDonald P.C. | *Attorneys for Defendant* |
| Tyler C. Schaeffer (60847MO) | |
| Brandon S. Stein (73707MO) | |
| 120 South Central Ave., Suite 1800 | |
| St. Louis, MO 63105 | |
| Telephone (314) 854-8600 | |
| Facsimile (314) 854-8660 | |
| tcs@carmodymacdonald.com | |
| bss@carmodymacdonald.com | |
| | |
| *Attorneys for Plaintiff* | |

---

## BRIEF IN OPPOSITION OF DEFENDANT UNIVERSAL GP PRODUCTS, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................. ii

TABLE OF AUTHORITIES ................................................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................v

Introduction ..........................................................................................................1

Factual Background ..............................................................................................2

Argument...............................................................................................................4

    1.  Mighty Good Has Not Sought a Claim for Recission. .............................4

    2.  Fraudulent Inducement is an Exception to the Economic Loss Doctrine. ....................................................................................................6

    3.  Mighty Good Has Stated a Claim for Fraud...........................................9

    4.  Universal's Misrepresentations Regarding its Access and Ability to Provide the Pumps is Not "Puffing."......................................................14

    5.  Even if Mighty Good Accepted the Nonconforming Pumps, it Has Stated a Claim and Has a Remedy Under the UCC. ...................................16

    6.  The UCC Expressly Allows Parol Evidence to Prove Terms of The Parties' Agreement. ...............................................................................20

    7.  Mighty Good is Permitted to Plead Alternative Claims for Breach of Contract and Unjust Enrichment. ..........................................................23

Conclusion ..........................................................................................................24

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Has Universal demonstrated that Mighty Good is in essence seeking claim for recission?

Mighty Good answers:  No

2. Does the economic loss doctrine bar Mighty Good's fraudulent inducement claim?

Mighty Good answers: No

3. Has Universal presented arguments demonstrating that Mighty Good failed to state a claim for fraudulent inducement?

Mighty Good answers: No

4. Were Universal's misrepresentations regarding its access to being ready and able to timely ship the requested pumps merely "puffing"?

Mighty Good answers: No

5. Has Universal presented uncontroverted facts demonstrating that Mighty Good accepted the non-conforming pumps delivered by Universal, and, if so, would such a finding defeat Mighty Good's breach of contract claim?

Mighty Good answers:  No.

6. Does the parol evidence rule bar Mighty Good's claim for breach of contract?

Mighty Good answers: No

7. Can Mighty Good plead unjust enrichment in the alternative to its claim for breach of contract?

Mighty Good answers: Yes

39713181.1/161506.00001

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*DBI Investments, LLC v. Blavin,*
  617 Fed. Appx. 374 (6th Cir. 2015 ....................................................................6

*Gen. Motors Corp. v. Alumi-Bunk, Inc.,*
  482 Mich. 1080, 757 N.W.2d 859 (2008) .........................................................6

*George v. Spencer,*
  223 N.W.2d 736 (1974) ..................................................................................15

*Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.,*
  532 N.W.2d 541 (Mich. App. 1995).......................................................v, 6, 7, 8

*Majic Window Co. v. Milgard Windows,*
  2007 WL 2121944 (E.D. Mich. July 24, 2007)......................................v, 18, 19

*Neibarger v Universal Coops, Inc.,*
  486 NW.2d 612 (Mich. 1992)............................................................................6

*Randall S. Miller & Associates, P.C. v. Pitney Bowes Inc.,*
  14-14447, 2016 WL 1242356 (E.D. Mich. Mar. 30, 2016) ................................7

*Samuel D Begola Services, Inc. v Wild Bros.,*
  534 N.W. 2d 217 (Mich. App. 1995)...............................................v, 13, 15, 16

*Solo v. United Parcel Serv. Co.,*
  819 F.3d 788 (6th Cir. 2016) ....................................................................23, 24

*Springs v. U.S. Dept. of Treasury,*
  567 Fed. Appx. 438 (6th Cir. 2014)...................................................................5

*Tyson v. Sterling Rental, Inc.,*
  836 F.3d 571 (6th Cir. 2016) ...........................................................................7

*United Precision Products Co., Inc. v. Avco Corp.,*
  540 Fed. Appx. 489 (6th Cir. 2013)............................................................v, 22

*Windham v. Morris,*
  121 N.W.2d 479 (1963) ..................................................................................15

iii

*XXX Int'l Amusements, Inc. v. Se. Visuals, LLC,*
    2017 WL 3877177 (E.D. Mich. Sept. 5, 2017) ......................................v, 23, 24

**Statutes**

42 U.S.C. §§ 1985 and 1986 ................................................................................1

MCL § 440.2102 ................................................................................................20

MCL § 440.2201 ..................................................................................................v

MCL § 440.2202 ..................................................................................v, 20, 21

MCL § 440.2711 ................................................................................................19

MCL § 440.2714 ..........................................................................................v, 17

Uniform Commerical Code................................... 4, 5, 6, 13, 16, 17, 19, 20, 21, 22

**Court Rules**

Federal Rule of Civil Procedure 8(d)(3) ...............................................................9

MCR 2.112(B)(1)...............................................................................................14

**Suspects**

*McMullen v. Joldersma*.......................................................................................9

# <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541 (Mich. App. 1995).

*Samuel D Begola Services, Inc. v Wild Bros.*; 534 N.W. 2d 217 (Mich. App. 1995)

*Majic Window Co. v. Milgard Windows*, 2007 WL 2121944 (E.D. Mich. July 24, 2007)

*United Precision Products Co., Inc. v. Avco Corp.*, 540 Fed. Appx. 489 (6th Cir. 2013).

*XXX Int'l Amusements, Inc. v. Se. Visuals, LLC*, 2017 WL 3877177 (E.D. Mich. Sept. 5, 2017)

MCL § 440.2714

MCL § 440.2201

MCL § 440.2202

## INTRODUCTION

Mighty Good Solution LLC ("Mighty Good") brings a straightforward case in which it alleges that Universal GP Product, LLC ("Universal") agreed to timely supply Mighty Good approximately 1.5 million pumps of a certain size to be used for hand sanitizer bottles.  Yet, Universal delivered only a portion of the pumps that were untimely and the wrong size, and Universal failed to deliver the remainder of the ordered pumps.  Universal's breach of its agreement as well as its false statements inducing Mighty Good to enter into an agreement with Universal caused Mighty Good damages.

Universal responds to Mighty Good's Complaint, in a haphazard, kitchen sink approach, raising a myriad of fundamentally flawed arguments.  Many of the arguments address causes of action and allegations that Mighty Good simply never made in an effort to create straw-man arguments that have no bearing on the actual case at hand.  Many other arguments blatantly omit controlling caselaw and statutes, despite the fact that Universal is aware of and cites the controlling authority for other legal propositions elsewhere in its brief.  Finally, some arguments appear to be relics from whatever prior brief Universal utilized in creating its current one – like an undeveloped statute of limitations argument and a suggestion that Mighty Good is making civil rights claims under 42 U.S.C. §§ 1985 and 1986.  [*See* ECF No. 8 at 12,19.]

1

Despite the difficulty in synthesizing Universal's scattershot arguments, a careful analysis of the arguments reveals that they fall apart under scrutiny and provide no basis to dismiss or grant summary judgment in favor of Universal on any of Mighty Good's claims.

## FACTUAL BACKGROUND

In Spring of 2020, Universal informed Mighty Good that it would be able to supply Mighty Good with certain pumps required by Mighty Good to use on bottles of hand sanitizer being produced by Mighty Good.  [ECF No. 1 at ¶7; Exhibit 1 at ¶6.]  Universal represented that it had ready access to the specific type of pump that Mighty Good required.  [ECF No. 1 at ¶8; Exhibit 1 at ¶8.]  During the sales pitch to Mighty Good and negotiation of their agreement, Universal made false statements that it was ready and able to provide the specific types of pumps Mighty Good needed within two weeks by June 5, 2020.  [ECF No. 1 at ¶38; Exhibit 1 at ¶7.]  Mighty Good did not know Universal's representations were false and the representations were material to Mighty Good's decision to enter an agreement with Universal.  [ECF No. 1 at ¶¶42-43; Exhibit 1 at ¶¶11-12.]

Based on Universal's representations, Mighty Good ordered nearly $1.5 million of size "28-400" pumps.  [ECF No. 1 at ¶10; Exhibit 1 at ¶10.]  Universal accepted the order and represented and agreed that the 28-400 pumps ordered would be delivered within two weeks.  [ECF No. 1 at ¶11; Exhibit 1 at ¶15.]  Mighty Good

39713181.1/161506.00001

paid Universal $0.653 per pump for a total sum of $966,700.  [ECF No. 1 at ¶12; Exhibit 1 at ¶16.]

The transactions were documented in purchase orders. [ECF No. 1 at ¶17; Exhibit 1 at ¶13.]  The first purchase order, dated May 22, 2020, expressly provided as a condition that the pumps "[m]ust arrive by 6/5/2020 to" a facility in Missouri. [ECF No. 1-1 at 1.]  While the parties agreed to the size "28/400" pump, the first purchase order was silent on the size of pump.  [*Id.*]  The second purchase order, dated June 1, 2020, was silent on the time of delivery of the pumps.  [*Id.* at 2.]  But, the second purchase order expressly stated that the pumps were to be the "28/400" size.  [*Id.*]

Universal failed to deliver any pumps within two weeks by June 5, 2020. [ECF No. 1 at ¶14; Exhibit 1 at ¶18.]   Universal thereafter delivered only 845,000 of the approximately 1.5 million pumps, and the pumps were not the "28-400" pumps ordered but were "28-410" sized pumps.  [ECF No. 1 at ¶¶16-17; Exhibit 1 at ¶¶20-21.]  In order to use the incorrectly sized pumps, Mighty Good had to obtain an extra piece, which created additional costs and delayed production.  [ECF No. 1 at ¶¶19-20; Exhibit 1 at ¶¶23-24.]  Mighty Good also requested the return of its money for the pumps Universal never delivered, but Universal refused to provide a refund.  [ECF No. 1 at ¶21; Exhibit 1 at ¶25.]  Universal has also failed to arrange to retrieve the incorrect pumps it delivered.  [*Id.*]  As a result of Universal's breaches

39713181.1/161506.00001

and non-performance, Mighty Good has been damaged.  [ECF No. 1 at ¶¶22; Exhibit 1 at ¶¶26.]   Mighty Good has brought claims for Breach of Contract (Count I), Fraudulent Inducement (Count II), and Unjust Enrichment (Count III). [ECF No. 1 at 3-6.]

**ARGUMENT**

### 1. **Mighty Good Has Not Sought a Claim for Recission.**

In its lead argument, Universal goes to great lengths to argue how Mighty Good failed to state a claim for recission of contract.  [ECF No. 8 at 20-23.]  Yet, Universal openly recognizes that Mighty Good "did not assert a claim for recission[.]"  [*Id.* at 21.]  Universal insists that this Court should still evaluate Mighty Good's claim as one for recission because, according to Universal, Mighty Good's "claim's essence" is one for recission because Mighty Good has "sue[d] [Universal] for all monies paid."[1]  Universal then cites to the common law elements of recission of contract for the proposition that Mighty Good must return all the pumps it received in order obtain the remedy of recission, a step Mighty Good does not allege it has taken.  [*Id.* at 20.]  Universal then transitions to a discussion about how, Mighty Good has not properly rejected the goods under the standards of the UCC and therefore is not entitled to recission. [*Id.* at 21-23.]

---

[1] Universal does not specify which count it is referring to in its "Recission" argument, but it appears to be Mighty Good's claim for Breach of Contract (Count I).

4

Contrary to Universal's assertion, Mighty Good's Complaint does not ask for a refund of "all monies paid."   Rather, Mighty Good alleged that it "has been damaged by Universal's breach" and that it is seeking "an amount to be determined in this proceeding."  [ECF No. 1 at 4.]  Nowhere in the Complaint has Mighty Good alleged that it is seeking to rescind the contract or recover as damages all monies it paid to Universal.  Instead, Mighty Good specifically describes certain damages it incurred from Universal's breach of contract, which include (1) the "additional costs" and "delays in production" Mighty Good incurred by having to utilize the incorrectly sized pumps Universal delivered; and (2) the monies Mighty Good paid for ordered pumps that Universal "never delivered."[2]  [ECF No. 1 at ¶¶20-21.]

Universal simply ignores Mighty Good's pleadings and attempts to improperly recast Mighty Good's Breach of Contract into something it is not.  *See*, *e.g., Springs v. U.S. Dept. of Treasury*, 567 Fed. Appx. 438, 448–49 (6th Cir. 2014) ("[The Plaintiff] is the master of her own complaint, and we will not read into her complaint a new claim that she did not allege.")  Because Mighty Good has neither expressly nor in "essence" alleged a claim to rescind the contract, Universal's argument – under either the common law or the UCC – that Mighty Good failed to state a claim for recission is irrelevant and provides no basis to dismiss or grant

---

[2] Surely Universal is not arguing that Mighty Good was supposed to return pumps that Universal never delivered to it.

summary judgment in favor of Universal on any claims in Mighty Good's Complaint.

**2. Fraudulent Inducement is an Exception to the Economic Loss Doctrine.**

Universal next argues that Mighty Good's claim for Fraudulent Inducement (Count II) is barred by the economic loss doctrine, which generally precludes tort claims when a claim in contract (or under the UCC) provides an adequate remedy. In so arguing, Universal relies exclusively on *Neibarger v Universal Coops, Inc,* in which the Michigan Supreme Court held that the economic loss doctrine barred tort claims for negligence and product liability where the plaintiff had an adequate remedy under the UCC. 486 NW.2d 612 (Mich. 1992). [ECF 8 at 23-24.] However, Universal fails to mention in its brief that in the subsequent Michigan Court of Appeals decision *Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.*, while expressly considering *Neibarger*, the court "conclude[ed] that fraud in the inducement is an exception to the [economic loss] doctrine." 532 N.W.2d 541, 543 (Mich. App. 1995). The Michigan Supreme Court, Sixth Circuit, and this Court have all since recognized and endorsed the *Huron Tool* court's holding as the prevailing law in Michigan.[3] Notably, Universal is aware of the *Huron Tool* case as it cites it for a different legal proposition later in its brief. [*See* ECF. No. 8 at 28.]

---

[3] *See Gen. Motors Corp. v. Alumi-Bunk, Inc.*, 482 Mich. 1080, 757 N.W.2d 859, 862 (2008); *DBI Investments, LLC v. Blavin*, 617 Fed. Appx. 374, 381 (6th Cir. 2015) ("Michigan courts recognize fraudulent inducement as an exception to the economic

In explaining the contours of the fraudulent inducement exception to the economic loss doctrine, the *Huron Tool* court stated:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior.

*Huron Tool*, 532 N.W.2d at 545 (1995); *see also Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016) ("Michigan courts have declined to apply the [economic loss] doctrine to bar claims for fraud in the inducement because such fraud cannot reasonably be anticipated and accounted for in the bargaining process."). However, the *Huron Tool* court qualified that the economic loss doctrine will bar a fraud in the inducement claim *"*where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, [because] the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." *Huron Tool*, 532 N.W.2d at 545.

Here, the economic loss doctrine does not bar Mighty Good's Fraudulent Inducement claim because Universal's misrepresentations did not "concern the quality or character of the goods sold". Rather, they relate to Universal's ability to

---

loss doctrine."); *Randall S. Miller & Associates, P.C. v. Pitney Bowes Inc.*, 14-14447, 2016 WL 1242356, at *3 (E.D. Mich. Mar. 30, 2016) (recognizing that the *Huron Tool* court "consider[ed] whether the ruling in *Neibarger* extends to intentional tort claims, and conclude[ed] that the economic loss doctrine applies to fraud claims apart from those that allege fraud in the inducement.")

timely provide the goods as needed by Mighty Good.  Specifically, Universal misrepresented "it had ready access to the specific type of pump that Might[y] Good required" and "that it was ready and able to provide the specific types of pumps [Mighty Good] needed for its own products by June 5, 2020." [ECF No. 1 at ¶¶8, 38-39; Exhibit 1 at ¶¶7-8, 10.]  Universal recognizes in its brief that "[Mighty Good] placed its order during the beginning period of the Coronavirus pandemic [when] [h]and sanitizer could not be located, and the demand for it was high." [ECF No. 8 at 15.]  Universal's misrepresentations regarding its ability to timely provide the necessary pumps in the volatile, high-demand COVID market undermined Mighty Good's ability to make an informed decision and negotiate terms with Universal. Because the misrepresentations materially affected Mighty Good's bargaining process with Universal, under the holding in *Huron Tool*, the economic loss doctrine does not bar Mighty Good's Fraudulent Inducement claim.

Since Universal will now be forced in its Reply to acknowledge that Michigan recognizes fraudulent inducement as an exception to the economic loss doctrine, Mighty Good suspects that Universal may pivot to argue that its misrepresentations about being able to timely provide the required pumps overlap with Mighty Good's allegation that the contract terms included two-week delivery, and therefore the economic loss doctrine should still bar Mighty Good's Fraudulent Inducement claim.  While this argument would fail for the reasons stated above, Universal has

8

taken the position in this lawsuit that "the contract terms do not call for or require the two-week shipping period." [ECF No. 8 at 16.] Thus, in addition to the reasons stated above, given that the parties dispute whether the contractual terms included two-week shipping, Mighty Good is permitted to plead alternatively that Universal's misrepresentations about its ready access and ability to timely supply the pumps was a fraudulent representation in the negotiation process and completely extraneous to the terms of the contract. *See* Federal Rule of Civil Procedure 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")

### 3. **Mighty Good Has Stated a Claim for Fraud.**

In its next section, Universal makes a myriad of incoherent half-arguments regarding Mighty Good's Fraudulent Inducement claim. [ECF No. 8 at 24-29.] Like Universal's lead argument that Mighty Good failed to state a claim for recission, Universal again simply ignores Mighty Good's pleadings in an attempt to create and then defeat irrelevant straw man arguments. Not only are Universal's arguments divorced from the actual issues in this case, they all fall apart under even modest scrutiny.

Universal begins its argument with a forceful citation to the 1988 Michigan Court of Appeals decision of *McMullen v. Joldersma*, where the court analyzed the elements of the claim for "***silent fraud***." [*Id.* at 24.] Universal highlights this case and others for the uncontroversial position that claims for "silent fraud" and

9

"negligent misrepresentation" both require a defendant to owe a duty to the plaintiff. [*Id.* at 26.]  While Universal comments that "[Mighty Good] does not even allege that Universal owed some duty", Universal does not explain why this is relevant or why it is directing the Court to consider the elements of silent fraud and negligent misrepresentation.  This is likely because Mighty Good *never* alleged claims for silent fraud or negligence misrepresentation.  Rather, Mighty Good alleged that Universal fraudulently induced it to contract with Universal with its spoken-out-loud misrepresentations that "it had ready access to the specific type of pump that Might[y] Good required" and "that it was ready and able to provide the specific types of pumps [Mighty Good] needed for its own products by June 5, 2020" and that "Universal knew that the [m]isrepresentations were false." [ECF No. 1 at ¶¶8, 38-40; Exhibit 1 at ¶¶7-8.]   As such, Universal's commentary on silent fraud and negligent misrepresentation is irrelevant.

In the second paragraph of this section, Universal incorrectly characterizes the misrepresentations at issue in this case. [ECF No. 8 at 25.]  Universal then attempts to argue that those made-up misrepresentations could not be fraudulent because of Universal's own contrary factual positions in this case, which, at best, merely highlight the disputed facts precluding dismissal and/or summary judgment.  [*Id.*] Universal begins by stating that "[a]ll of [Mighty Good's] allegations are that Universal misrepresented the quality or type of pump that it was providing to

[Mighty Good] . . . ."  [*Id.*]  As quoted above, Mighty Good alleged that Universal misrepresented its access to and ability to timely supply the specified pumps – not the quality or type of pump.  [ECF No. 1 at ¶¶8, 38-30; Exhibit 1 at ¶¶7-8.]  So, at the outset, Universal is not even addressing the actual misrepresentations at issue in the case.

Then, Universal claims that its misrepresentations about the size of pumps could not constitute fraud because "Universal had no independent knowledge of what [Mighty Good] was seeking and had matched the pump to the bottle that [Mighty Good] had supplied."  [ECF No. 8 at 25.]  Not only has Universal failed to address the actual misrepresentations at issue in this case, but Universal's argument also ignores Mighty Good's allegations and evidence that not only did Universal have knowledge of the specific size of pumps Mighty Good was seeking, Universal further contracted to provide Mighty Good those very pumps.[4]  [*See* ECF No. 1 at ¶¶7-11; Exhibit 1 at ¶¶14-15.]  Notwithstanding its failure to address the actual misrepresentations at issue in the case, Universal's argument does not support dismissal because it does not accept Mighty Good's pleadings as true and does not

---

[4] Notably, while Universal claims ignorance as to which size pumps Mighty Good wanted, one of the two Purchase Orders accepted by Universal expressly specified on it the "28/400" size of the pump that Mighty Good needed.  [*See* ECF No. 1-1 at 2].

39713181.1/161506.00001

support summary judgment because it exposes the existence of a disputed fact question.

Next, Universal makes the argument that Mighty Good cannot claim fraud because it did not reasonably rely on Universal's misrepresentations as Mighty Good should have inspected the pumps after Universal delivered them and realized they were the wrong size. [ECF No. 8 at 26-28.] Again, to make this argument, Universal first misstates the actual misrepresentations at issue, in which it incorrectly states without citation: "[Mighty Good] alleges that Universal represented the composition, quantity, and type of the subject goods, i.e., the 28/400 Pump[.]" [*Id.* at 27.] As stated, Universal's misrepresentation did not concern the pump size – it concerned Universal's access and ability to timely deliver the pumps. [ECF No. 1 at ¶¶8, 38-30; Exhibit 1 at ¶¶7-8.] Additionally, Universal suggests that Mighty Good should have disabused itself of Universal's misrepresentation as to the size of the pump at the time Universal delivered the pumps in Michigan, but before Mighty Good shipped the pumps to Missouri. [*See* ECF No. 8 at 27-28.] Put differently, Universal is saying that if this case were about Universal misrepresenting the size of the pump – which it is not – that Mighty Good has no reasonable reliance in Universal's misrepresentation because it could have learned *after* Mighty Good already negotiated with, chose to contract with, and paid Universal for the pumps, that Universal did not provide the correct size pump it promised. The damage from

12

Universal's hypothetical misrepresentation would have already been incurred by the time Universal claims Mighty Good *could* have learned Universal delivered the wrong sized pumps.  Again, this argument falls far short of providing a basis for dismissal or summary judgment.

Finally, Universal acknowledges that fraud in the inducement "addresses a situation where the claim is that one party was tricked into contracting" based on "pre-contractual conduct" and that it "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon."  [ECF No. 8 at 28 citing *Huron Tool*, 532 N.W. 2d 541 and *Samuel D Begola Services, Inc. v Wild Bros.*; 534 N.W. 2d 217 (Mich. App. 1995).]  Universal claims that there could be no trickery because Mighty Good "should have spelled out the terms of 'two-weeks delivery' and the 28/400 verses the 28/410 Pump" in the Purchase Orders.  [*Id.*]  Initially, as explained further below, Universal misunderstands that under the UCC, the terms of the Purchase Order do not represent the full representation of the parties' agreement, and Mighty Good alleged that it did contract for two-weeks delivery and the 28/400 pump.  [ECF No. 1 at ¶¶10-11; Exhibit 1 at ¶¶14-15.]  As well, Universal ignores that one of the Purchase Orders did specify the "28/400" sized pump and the other expressly required two-week delivery.  [*See* ECF No. 1-1 at 1-2]  Moreover, the above legal standards quoted by Universal actually underscore the validity of Mighty

Good's fraudulent inducement claim as Universal's misrepresentation that it could timely supply the required pumps in the midst of the hand sanitizer frenzy during the early stage of COVID was absolutely a material representation of future conduct under circumstances in which Mighty Good could, and did, reasonably rely upon in choosing to contract with Mighty Good.[5]

### 4. Universal's Misrepresentations Regarding its Access and Ability to Provide the Pumps is Not "Puffing."

In its fourth argument, Universal claims that its misrepresentations are not actionable, but merely "puffing." [ECF. No. 8 at 29.] Yet again, Universal gets its argument off on the wrong foot by misstating the actual misrepresentation at issue. Similar to before, Universal incorrectly states that "[Mighty Good] alleges that Universal represented to it the quality and compatibility of the goods, i.e., that the #28-400 Pumps fitting tightly and sealed into a bottle." [*Id.* at 29.]  In support, Universal then cites two cases from the 1960s and 1970s holding that statements from real estate brokers that they "had several purchasers who were interested in buying [the property], and that he could sell it for $2500 an acre with a profit for both of them" and that the estimate "cost of the [certain] repairs would not exceed $2,000"

---

[5] Universal also lobs into its "Fraud and Misrepresentation" section the general statements that "MCR 2.112(B)(1) [a Michigan state rule] requires that fraud allegations must be stated with particularity" and that Universal's misrepresentations "are commercially deemed ***puffing***." [ECF No. 8 at 26-27.]  Universal makes no effort to elaborate on these statements in this section and, consequently, Mighty Good does not, and really cannot, address them.

were nonactionable statements of opinion. *George v. Spencer*, 223 N.W.2d 736, 737 (1974); *Windham v. Morris*, 121 N.W.2d 479, 481 (1963). Talking about "interested" third parties or "estimating" repair costs that a third party would have to perform is a far cry from Universal telling Mighty Good that it has access to and was ready and able to supply 1.5 million of a particular size of pump in two weeks in the middle of the pandemic when it did not. Universal's misrepresentations about its ability to timely ship the needed pumps were not merely "salesmen's talk" in promoting a sale or "puffing" – it went to the very heart of why Mighty Good decided to contract with Universal. As such, Universal's arguments regarding puffing also provide no basis for dismissal and/or summary judgment on Mighty Good's Fraudulent Inducement claim.

Mighty Good notes that within the section in Universal's brief regarding puffing, Universal also cites to cases for the rule that claims for "fraud" and "innocent misrepresentation" must be predicated on a statement relating to a past or an existing fact. [*See* ECF No. 8 at 29-30.] Per usual, Universal ignores that Mighty Good did not assert claims for fraud or innocent misrepresentation, and that a claim for fraudulent inducement, like the one Mighty Good asserted, need not be premised on a statement of past or existing fact. Universal appeared to understand this distinction earlier in its brief where it cited to and quoted from *Samuel D. Begola Services, Inc.*, 639, 534 N.W.2d at 219 for the proposition that fraudulent

inducement involves misrepresentations of "future conduct." [*See* ECF No. 8 at 28.]

In fact, the portion of the opinion Universal quoted clearly explained the difference

between ordinary fraud and fraudulent inducement:

> While plaintiff is correct in asserting that, in general, actionable fraud
> must be predicated on a statement relating to a past or an existing fact,
> . . . Michigan also recognizes fraud in the inducement. Fraud in the
> inducement occurs where a party materially misrepresents future
> conduct under circumstances in which the assertions may reasonably
> be expected to be relied upon and are relied upon.

534 N.W.2d at 219.  Not only did Universal cite to the inapplicable standard for

fraud, it also made no effort to thereafter explain how the misrepresentations at issue

in this case failed to meet even that standard.[6] [*See* ECF No. 8 at 29-30.]  Universal

again has offered no basis to dismiss or grant summary judgment on Mighty Good's

Fraudulent Inducement claim.

### 5. **Even if Mighty Good Accepted the Nonconforming Pumps, it Has Stated a Claim and Has a Remedy Under the UCC.**

In its next section, Universal argues at length that under the UCC, Mighty

Good did not reject or revoke acceptance of the incorrectly sized pumps Universal

delivered and has therefore accepted the pumps.  [ECF No. 8 at 30-34.]  This

argument appears to be an extension of Universal's first argument that Mighty Good

did not state a claim for recission as Universal again premises its argument on the

---

[6] Notably, the alleged misrepresentations here regarding Universal's "access" to the correct pumps and being "ready and able" to timely ship them is a statement of present fact.

incorrect statement that Mighty Good "has retained the goods and now demands the return of its money."  [*Id.* at 34.]

Again, Mighty Good did not assert a blanket claim for "the return of its money."  As stated above, Mighty Good alleged that it "has been damaged by Universal's breach" and that it is seeking "an amount to be determined in this proceeding."  [ECF No. 1 at 4.]

More importantly, even if a jury later determined that Mighty Good accepted the incorrectly sized pumps, it has still stated a claim and has a remedy under the UCC.  The UCC provides the following remedy for a buyer that accepts nonconforming goods:

> Where the buyer has accepted goods and given notification (subsection (3) of section 2607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

MCL. § 440.2714(1).  The official comments further provide that the nonconformity may relate to a breach of warranty or, as here, a breach of contract:

> The "non-conformity" referred to in subsection (1) includes not only breaches of warranties **but also any failure of the seller to perform according to his obligations under the contract**. In the case of such non-conformity, the buyer is permitted to recover for his loss "in any manner which is reasonable."

*Id.* cmt. 2. (emphasis added)  As such, even if a jury later determines that Mighty Goods accepted the incorrectly sized pumps, Mighty Good has still stated a claim

for breach of contract and may recover its damages "in any manner which it reasonable."

Not only does Universal's argument that Mighty Good accepted the pumps not defeat Mighty Good's claim for Breach of Contract, Universal's argument involves a highly-nuanced fact question that is improper on a motion to dismiss or Universal's premature motion for summary judgment. *See Majic Window Co. v. Milgard Windows*, 2007 WL 2121944, at *4 (E.D. Mich. July 24, 2007) ("The existence of acts tending to show an acceptance or rejection of goods is for the jury to determine.") (citing *Valley Die Cast Corp. v. A.C.W. Inc.*, 181 N.W.2d 303, 308 (Mich. App. 1970)).  Universal argues that Mighty Good must have accepted the incorrectly sized pumps because Mighty Good could have inspected the pumps and discovered they were the wrong size before having its agent ship them from Michigan to Missouri.  [ECF No. 8 at 30-34.]  The only fact Universal cites in support of this argument is the Missouri federal court's finding that Mighty Good hired the logistics company and shipping company that shipped the pumps from Universal's location in Michigan to Missouri. [*Id.* at 30-31.]  Notably, there are no facts that personnel from Mighty Good were in Michigan to inspect the pumps or that the logistics company or shipping company were qualified to inspect the pumps.

The fact that a company hired by Mighty Goods shipped the pumps from Michigan to Missouri alone falls woefully short of providing this Court with a

factual record to determine whether Mighty Good accepted the nonconforming pumps as a matter of law.  For instance, in *Majic Window*, this Court held that a party failed to meet its burden of showing acceptance as a matter of law on summary judgment because the record was:

> not clear how long, if at all, [the buyer] was in possession of the products before sending them on to its customers, whether it sent all of the products to its customers before giving notification of defects to [the seller], whether it was [the buyer] or its customers who first noticed the defects, or how much time elapsed between [the buyer's] receipt of the products, its discovery of defects and its notification to [the seller] of defects.

2007 WL 2121944, at *4.  Similarly, the scant record before this Court precludes a ruling on the fact question of whether Mighty Good accepted the nonconforming pumps.

Finally, it is worth noting that Universal continues to ignore Mighty Good's allegations regarding pumps it ordered, paid for, but that Universal never delivered. [ECF No. 1 at ¶¶ 15-21; Exhibit 1 at ¶¶19-25.]  The UCC provides remedies to a buyer when the seller accepts payment but never delivers the goods.   MCL § 440.2711 ("Where the seller fails to make delivery . . . the buyer . . . may in addition to recovering so much of the price as has been paid [recover other specified damages].")   Obviously Mighty Good cannot accept pumps Universal never delivered, and, Mighty Good has stated a claim for breach of contract under the UCC for Universal's failure to deliver pumps for which Mighty Good already paid.

19

6. **The UCC Expressly Allows Parol Evidence to Prove Terms of The Parties' Agreement.**

After spending 22 pages extensively arguing the applicability of the UCC to Mighty Good's claims, Universal omits any mention of the UCC's provisions in its section regarding parol evidence so it can argue that the <u>common law</u> parol evidence rule prohibits Mighty Good from offering allegations or evidence of the parties' agreement outside the terms of the written Purchase Orders.  [ECF No. 8 at 34-35.] Prior to this section, Universal was adamant that Mighty Good's claims "are controlled by the Uniform Commercial Code" – an assertion Mighty Good does not dispute.[7]  [*See* ECF No. 8 at 12; *see also* MCL § 440.2102 ("this article applies to transactions in goods[.])"]  But, the UCC expressly allows for parol evidence to explain and supplement the terms of the parties' written agreement.  *See* MCL § 440.2202.

The UCC recognizes that in the commercial sale of goods, parties often do not have written contracts spelling out every specific term of the parties' agreement as one would expect in other types of transactions.  For sales of goods for $1,000.00 or more, the UCC merely requires "a writing sufficient to indicate that a contract for

---

[7] Universal even complains that "[Mighty Good] alleges no UCC claims and does not even mention the UCC." [ECF No. 8 at 12.]  As demonstrated in this brief, Mighty Good has sufficiently stated claims authorized by the UCC and there is no requirement that Mighty Good use the magic words "UCC" in its complaint to do so.

sale has been made." MCL § 440.2202. The UCC is extremely lenient on the content of such writing, providing that the writing is "not insufficient because it omits or incorrectly states a term agreed upon" but is only required to state at a minimum the "quantity of goods." *Id.* The UCC's official comments add that the writing "need not contain all material terms", the writing need not be formal and, for example, can be "written in lead pencil on a scratch pad", and [t]he price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted." *Id.* at cmt. 1.

Similarly, the UCC's parol evidence rule acknowledges that parties to the sale of goods often do not have comprehensive written agreements. As such, the UCC states that the parol evidence rule applies only when the written document was "intended by the parties as a final expression of their agreement with respect to those terms as included in that memorandum or writing", and, in such cases, parol evidence may not contradict the terms agreed upon in the writing. MCL § 440.2202. However, even when the writing is intended to be final on the terms stated therein, the UCC still allows the parties' agreement to be "explained or supplemented by . . . evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." MCL § 440.2202. The UCC's official comments to its parol evidence rule further emphasize that "[t]his section definitely rejects . . . [a]ny assumption that

because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon[.]" *Id.* at cmt. 1.

Applying Michigan law, the Sixth Circuit has specifically concluded that "the existence of the purchase orders alone cannot trigger the parol evidence rule". *United Precision Products Co., Inc. v. Avco Corp.*, 540 Fed. Appx. 489, 493 (6th Cir. 2013). Rather, the Court held that the UCC permits parol evidence to supply consistent terms to the purchase orders unless and until it is determined as a question of fact that the purchase orders represented a final expression of the parties' agreement. *Id.* (citing numerous cases).

Here, there is no evidence – and it is also premature to make the factual determination – that the Purchase Orders represented a final expression of the parties' agreement. Moreover, the contract terms Mighty Good alleges in this case are not inconsistent with the terms contained in the written Purchase Orders. Specifically, the alleged material terms were that Universal was to deliver the pumps in two weeks and that the pumps be size "28/400." The first Purchase Order, dated May 22, 2020, expressly stated the two-week delivery term ("Air freight – Must arrive by 6/5/2020 to the following facility" in Missouri) but was silent on the size of the pump (stating only "32 oz Pump"). [ECF. 1-1 at 1.] Conversely, the second Purchase Order, dated June 1, 2020, was silent on the timing of delivery (stating only "Air freight – Must arrive to the following facility" in Missouri), but expressly stated

the required size of pump ("32 oz Pump – 28/400A").  [*Id.* at 2.]  As such, to the extent Mighty Good alleges parol evidence of terms outside that stated in the Purchase Orders, the parol evidence is not inconsistent the Purchase Orders and thus provides no basis to dismiss or grant summary judgment on Mighty Good's claim for Breach of Contract.

7. **Mighty Good is Permitted to Plead Alternative Claims for Breach of Contract and Unjust Enrichment.**

Finally, Universal claims that the Mighty Good cannot bring a claim for Unjust Enrichment (Count III) because the "Purchase Orders (**Exhibits 3 and 4**) are the written contract between the parties and, therefore, there can be no claim for unjust enrichment in this matter."  [ECF. No. 8 at 35.]  However, this Court has recognized that under both federal and Michigan law, a party may plead breach of contract and unjust enrichment in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *XXX Int'l Amusements, Inc. v. Se. Visuals, LLC*, 2017 WL 3877177, at *2, 3 n.2 (E.D. Mich. Sept. 5, 2017); *see also Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016).  While Universal has now in its brief made the judicial admission that the Purchase Orders represent the parties' written contracts, Universal has also, contrary to Mighty Good's position, argued that "the contract terms do not call for or require the two week shipping period, and the contract does not call for the #28-410 pumps versus the #28-400 pumps."  [ECF No. 8 at 16.]  As such, this raises the possibility

23

of a dispute over whether the parties had a meeting of the mind over the material terms to form a contract.  Thus, at this early stage of the proceedings, it is improper to dismiss Mighty Good's alternative claim for unjust enrichment. *See, e.g., XXX Int'l Amusements, Inc.*, 2017 WL 3877177, at *2-3; *Solo*, 819 F.3d at 796.

## CONCLUSION

Based on the foregoing, Mighty Good respectfully requests that the Court deny Universal's Motion to Dismiss, including its arguments for dismissal and summary judgment, and grant Mighty Good all relief the Court deems fair and just.

Respectfully submitted,

MILLER CANFIELD PADDOCK & STONE PLC

By:    /s/Jeffrey A. Crapko
          Jeffery A. Crapko (P78487)
          150 W. Jefferson Ave. Ste 2500
          Detroit, MI 48226
          Telephone: (248) 267-3237
          Facsimile: (248) 879-2002
          crapko@millercanfield.com

CARMODY MACDONALD P.C.
          Tyler C. Schaeffer, #60847MO
          Branden S. Stein, #73707MO
          120 S. Central Ave., Suite 1800
          St. Louis, Missouri 63105
          Telephone (314) 854-8600
          Facsimile (314) 854-8660
          tcs@carmodymacdonald.com
          bss@carmodymacdonald.com

Dated:  October 3, 2022                    *Attorneys for Plaintiff*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2022, the foregoing document was electronically filed with the Clerk of the Court using the courts electronic filing system, which will send notification of such filing to all attorneys of record.

/s/ *Jeffrey A. Crapko*