UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIGHTY GOOD SOLUTIONS, LLC,

      Plaintiff,                                Case No. 22-11153

v.                                                  HON. DENISE PAGE HOOD

UNIVERSAL GP PRODUCTS, LLC,

      Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (#8)**

**I.    BACKGROUND**

This matter is before the Court on Defendant Universal GP Products, LLC's Motion to Dismiss and/or for Summary Judgment. A response and reply have been filed and a hearing held on the matter.

On May 26, 2022, Plaintiff Mighty Good Solutions, LLC filed a Complaint against Universal alleging the following counts: Breach of Contract (Count I); Unjust Enrichment (Count II); and Fraudulent Inducement (Count III). Mighty Good is a consumer-packaged goods company manufacturing and producing household goods. [ECF No. 1, PageID.2]. The Complaint alleges that in the Spring of 2020, Universal approached Mighty Good and informed Mighty Good that it

would be able to supply Mighty Good with certain pumps required by Mighty Good with respect to bottles of hand sanitizer being produced by Mighty Good. *Id.* Universal represented that it had ready access to the specific type of pump that Mighty Good required, that it had the ability to deliver the requested pumps within two weeks, and that Universal could be Mighty Good's exclusive supplier of the required pumps. *Id.* Mighty Good ordered nearly 1.5 million of a specific type of pump – the "28-400" pump based on Universal's representations. *Id.* Universal accepted the order and represented and agreed that the 28-400 pumps would be delivered within two weeks at $0.653 per pump with the total sum of $966,700. *Id.* Purchase orders were submitted by Mighty Good to Universal dated May 22, 2020, and June 1, 2020. *Id.;* and PageID.8-9.

Universal failed to deliver the pumps within two weeks per the terms of the parties' agreement. When delivered several weeks later, Universal delivered only 845,000 pumps rather than the 1.5 million pumps promised, and the pumps were the wrong size, **28-410**, instead of the "28-400" size agreed to by the parties. *Id*. at PageID.3. The 28-410 pumps were not compatible with the bottles that Mighty Good was using for the hand sanitizer. To get the pumps to fit securely, Mighty Good was forced to include an extra piece, which created additional costs for Mighty Good and also delayed the production of the hand sanitizer. *Id.* Mighty Good

2

requested a refund for the pumps that were never delivered, but Universal has refused to process the refund. *Id.* Universal also failed to arrange to retrieve the incorrect pumps that it delivered. *Id.* Mighty Good claims it has been damaged by Universal's breaches and non-performance. *Id.*

Mighty Good initially filed the instant action in Missouri, which was removed by Universal on February 10, 2021, to the United States District Court, Western District of Missouri, Case No. 4:21-cv-00080-FJG. [ECF No. 8, PageID.63-65]. On November 22, 2021, the Western District of Missouri case was dismissed for lack of personal jurisdiction, finding that Universal "has no employees, agents or offices in Missouri. It neither solicited business, nor created or performed a contract within Missouri." [ECF No. 8, PageID.90-.91]. Mighty Good thereafter filed the instant suit in this District on May 26, 2022.

## II.   ANALYSIS

### A.   Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

    **B.**    **Rescission**

Universal argues that Mighty Good is not entitled to rescission since it did not return "all benefits" it received before filing suit. Universal clams that Mighty Goods will argue that it did not assert a claim for rescission in its Complaint, but that

the Court is not bound by the label placed on a claim by a party. Universal asserts that Mighty Good retained the goods, has refused to pick up the balance of the pumps purchased and has failed to pay $652,071.81 to Universal. Universal claims Mighty Good must first return the products, prior to filing suit, in order to claim rescission. Also, under the UCC, Universal claims that Mighty Good must return the goods if properly rejected. MCL 440.2401(d). Because Mighty Good seeks its monies back, Mighty Good must demonstrate that it properly rejected the goods and made the effort to return the goods, which such goods would revest title in Universal. Universal claims Mighty Good has made no attempt to reject or revoke the acceptance of the goods at issue.

In response, Mighty Good asserts that it does not ask for a refund of "all monies paid", but rather seeks damages for Universal's breach, in an amount to be determined. Mighty Good claims that the Complaint does not seek to rescind the contract or recover as damages all the monies it paid to Universal. Instead, Mighty Good seeks damages including "additional costs" and "delays in production" incurred by having to utilize incorrectly sized pumps delivered by Universal and for monies Mighty Good paid for ordered pumps that Universal "never delivered."

The Court's review of the Complaint indicates that Mighty Good does not seek "rescission" nor return of the monies paid for the pumps. Mighty Good seeks

6

damages for incurring costs from utilizing pumps different than the parties agreed to. Mighty Good claims Universal delivered the **28-410** sized pumps, instead of the "28-400" size agreed to by the parties. [ECF No. 1, PageID.3.]. As alleged by Mighty Good, the 28-410 pumps were not compatible with the bottles that Mighty Good was using for the hand sanitizer and that to get the pumps to fit securely, Mighty Good was forced to include an extra piece, which created additional costs for Mighty Good and also delayed the production of the hand sanitizer. *Id*. Mighty Good requested a refund for the pumps that were never delivered, but Universal has refused to process the refund. *Id.*

The Court denies Universal's Motion to Dismiss Mighty Good's Breach of Contract claim based on failure to state a rescission claim or remedy or a UCC claim under MCL 440.2401(d) at this time since a reading of the Complaint shows that Mighty Good did not seek rescission, but instead seeks damages as a result of the wrong sized pump provided by Universal, including additional costs and delay of production. However, it appears that Mighty Good is seeking some sort of rescission because it alleges that "Universal also failed to arrange to retrieve the incorrect pumps that it delivered." [ECF No. 1, PageID.3]. Because there has yet to be discovery conducted in this case, the Court denies without prejudice the dismissal of

7

any possible rescission claim based on any claims by Mighty Good as to failure to retrieve any incorrect pumps as alleged in the Complaint.

### C. Economic Loss Doctrine

Universal seeks dismissal of Mighty Good's Fraudulent Inducement claim in Count III because it is a tort theory, and that under the economic loss doctrine, Mighty Good is not entitled to such. Universal claims that Mighty Good's breach of contract claim is, at best, a breach of contract claim covered by the UCC exclusively.

Mighty Good claims in response that the economic loss doctrine does not bar Mighty Good's Fraudulent Inducement claim because Universal's misrepresentations did not "concern the quality or character of the goods sold" but rather they relate to Universal's ability to timely provide the goods as needed by Mighty Good.

The economic loss doctrine is a Michigan judicial construction that limits claimants to recovery in contract when a cause of action arises under the Uniform Commercial Code ("UCC"). *Huron Tool and Engineering Co.,* 209 Mich. App. 365, 368 (1995); *Imaging Financial Services, Inc. v. Lettergraphics/Detroit, Inc.,* 178 F.3d 294, 1999 WL 115473, * (6th Cir. 1999)(unpublished). In *Neibarger v.*

8

*Universal Cooperatives, Inc.*, 439 Mich. 512 (1992), the Michigan Supreme Court defined the economic loss doctrine:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resorting to the law of torts.

*Id.* at 517. A claim which sounds in tort but merely seeks damages based on the quality of a product is the essence of a warranty action under the UCC. *Id.*

An exception to the economic loss doctrine has been recognized by the Michigan Court of Appeals. The exception occurs when a party is fraudulently induced to sign a contract. *Huron Tool*, 209 Mich. App. at 368. The *Huron Tool* panel stated,

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely--which normally would constitute grounds for invoking the economic loss doctrine--but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. In contrast, where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

*Id.* at 372-73.

9

In this case, the Complaint alleges that Universal induced Mighty Good to purchase the hand pumps. Universal represented that it had ready access to the specific type of pump that Mighty Good required, that it had the ability to deliver the requested pumps within two weeks, and that Universal could be Mighty Good's exclusive supplier of the required pumps. [ECF No. 1, PageID.2] Mighty Good ordered nearly 1.5 million of a specific type of pump – the "28-400" pump based on Universal's representations. *Id.* At this juncture in the proceedings, the Court denies Universal's motion to dismiss Mighty Good's Fraudulent Inducement claim found in Count III based on the economic loss doctrine.

### D.   Fraud and Misrepresentation

Universal makes no persuasive arguments related to Plaintiff's fraud claims. Universal seeks dismissal of Mighty Good's fraudulent inducement claim "Universal had no independent knowledge of what [Mighty Good] was seeking and had matched the pump to the bottle that [Mighty Good] had supplied." [ECF No. 8, PageID.48]. Universal further argues that the purchase orders that Mighty Good supplied "provide no description of a 28-400 Pump versus a 28-410 Pump." *Id*. While Universal claims that it had no idea what pump Mighty Good wanted, Universal relies on an October 2, 2020, email allegedly sent to Mighty Good from

10

Universal's President, Jose Reyes, in stating that "it is clear as day that the pump being supplied was the 28/410 Pump." *Id*.

Universal cites *Nieves v. Bell Indust.*, 204 Mich. App. 459, 464-65; 517 N.W. 2d 235 (1994) for the proposition that "a plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore." [ECF No. 8, PageID.50]. Universal asserts that it provided Mighty Good with "the actual pump as an example of what it was providing" and Mighty Good "could, should, and did, inspect the shipment before accepting the goods[.]" *Id*.

Mighty Good argues that Universal mischaracterizes the misrepresentations that Mighty Good complains of. [ECF No. 10, PageID.143]. Mighty Good argues that "Universal begins by stating that '[a]ll of [Mighty Good's] allegations are that Universal misrepresented the quality or type of pump that it was providing to [Mighty Good].' *Id*. at PageID.143-44. However, Mighty Good claims that "Universal misrepresented its access and ability to timely supply the specified pumps – not the quality or type of pump." *Id*. at PageID.144. Mighty Good argues that "Universal's argument does not support dismissal because it does not accept Mighty Good's pleadings as true and does not support summary judgment because it exposes the existence of a disputed fact question." *Id*.

11

Mighty Good's Complaint alleges "[d]uring its sales pitch to Mighty Good and the negotiation of their agreement, Universal made numerous false representations to Mighty Good (the "Misrepresentations"), including but not limited to the fact that it was ready and able to provide the specific types of pumps Plaintiff needed for its own products by June 5, 2020." [ECF No. 1, PageID.5]. The delivery date was also noted in the May 22, 2020, Purchase Order under "Conditions." [ECF No. 1-1, PageID.8].

While Universal argues that the type of product and not the timeliness is at issue, the only support Universal provides is an email that it claims was sent to Mighty Good in October of 2020. Notably, the document does not include any email addresses and there is nothing showing that the letter was actually received by Mighty Good or a true representation of the parties' interactions. Further, neither of the declarations provided by Universal make mention that Universal provided Mighty Good with the product beforehand to inspect it prior to accepting the products. See [ECF Nos. 8-6 and 8-7]. Therefore, even if Mighty Good's misrepresentation claim hinged on the type of products and not the timeliness of delivery, summary judgment would still be inappropriate as the documents provided do not support Universal's argument.

12

Universal argues that Mighty Good's reliance on its statements was not reasonable because the statements at issue amount to nothing more than puffing and cannot constitute fraud or misrepresentations. [ECF No. 8, PageID.50]. Universal argues that "[i]f [Mighty Good] was so concerned, it should have spelled out the terms of 'two-weeks delivery' and the 28/400 Pump versus the 28/410 Pump, in the written agreements, i.e. the Purchase Orders." *Id*. at PageID.51.

Mighty Good argues that "Universal's misrepresentations about its ability to timely ship the needed pumps were not merely 'salesmen's talk' in promoting a sale or 'puffing' – it went to the very heart of why Mighty Good decided to contract with Universal." [ECF No. 10, PageID.148].

"Opinion and puffery encompass a 'sales [person's] talk in promoting a sale' and statements that serve 'to 'hype' [a] product beyond objective proof.'" *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 597 (E.D. Mich. 2017) quoting *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 Fed.Appx. 493, 501 (6th Cir. 2014). "[W]hen the assertions make specific representations, especially numerically quantifiable representations, courts are much more likely to find the representations actionable." *Id*. Here, Mighty Good asserts that Universal represented that it was "ready and able to provide the specific types of pumps [Mighty Good] needed for its own products by June 5, 2020." [ECF No. 10-1, PageID.161]. Such a statement is not so general

13

that Mighty Good should not have relied on it and Mighty Good had no way of knowing Universal's contacts related to its ability to acquire the products. Had Universal proclaimed that it could get the pumps "quickly" or "in no time," the outcome would be quite different. However, Universal quantified a delivery date that Mighty Good alleges it did not meet. Universal's specific statement is not mere puffery.

Universal's request that Mighty Good's claim for fraudulent inducement be dismissed is denied. Further, summary judgment is inappropriate here given that the timing of delivery is a genuine issue in dispute.

### E. Unjust Enrichment

Universal argues that Mighty Good cannot maintain its unjust enrichment claim because the parties have a written agreement. Mighty Good argues that unjust enrichment can be plead in the alternative where "there is a dispute between the parties as to whether an express agreement exists." [ECF No. 10, PageID.156 *quoting XXX Int'l Amusements, Inc. v. Se. Visuals, LLC*, 2017 WL 3877177, at *2, 3 n.2 (E.D. Mich. Sept. 5, 2017)]. Mighty Good further asserts that Universal "made the judicial admission that the Purchase Orders represent the parties' written contracts[.]" *Id*. Yet, Mighty Good urges the Court to deny dismissal of its unjust enrichment claim because Universal disagrees that the contract terms call for the

14

two-week shipping period. Mighty Good's argument would lead this Court to the opposite conclusion of *XXX Int'l Amusements, Inc.*, where the court concluded that the Defendants seemingly implied that there was no valid contract. 2017 WL 3877177, at *2.

There is no indication that the parties disagree as to whether the purchase orders reflect the written agreements between the parties related to the litigation presently before the Court. Therefore, Universal's motion to dismiss is granted as to Plaintiff's claim for unjust enrichment.

### III. CONCLUSION/ORDER

IT IS ORDERED that Defendant's Motion to Dismiss and/or Summary Judgment [ECF No. 8] is DENIED as to Count I: Breach of Contract and Count III: Fraudulent Inducement.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss and/or Summary Judgment [ECF No. 8] is GRANTED as to Count II: Unjust Enrichment.

SO ORDERED.

/s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: January 2, 2025

15

I hereby certify that a copy of the foregoing document was served upon counsel of record or party on January 2, 2025, by electronic and/or ordinary mail.