## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MIGHTY GOOD SOLUTIONS,
LLC,

       Plaintiff,                             Case No. 22-11153

v.                                      Hon. Denise Page Hood

UNIVERSAL GP PRODUCTS,

       Defendant.

_____/

## ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S FIRST AMENDED COUNTERCLAIM [ECF NO. 27]

### I.    INTRODUCTION

Before the Court is Plaintiff/Counter-Defendant Mighty Good Solutions, LLC's ("Mighty Good") motion to dismiss Defendant/Counter-Plaintiff Universal GP Products, LLC's ("Universal") Counterclaim. [27]. The motion is fully briefed, and a hearing is set for Wednesday, July 23, 2025. For the reasons stated herein, Mighty Good's motion is GRANTED.

### II.    BACKGROUND

The Court is familiar with the highly disputed facts of this matter. Mighty Good is a consumer-packaged goods company manufacturing and producing

household goods.  [ECF No. 1, PageID.2]. The parties agree that in the Spring of 2020, Mighty Good sought to acquire certain pumps needed to produce a large quantity of bottled hand sanitizer. According to Mighty Good, Universal represented that it had ready access to the specific type of pump that Mighty Good required, that it had the ability to deliver the requested pumps within two weeks, and that Universal could be Mighty Good's exclusive supplier of the required pumps. *Id.* Mighty Good ordered nearly 1.5 million of a specific type of pump – the "28-400" pump based on Universal's representations. *Id.* Universal accepted the order and represented and agreed that the 28-400 pumps would be delivered within two weeks at $0.653 per pump with the total sum of $966,700. *Id*. Purchase orders were submitted by Mighty Good to Universal dated May 22, 2020, and June 1, 2020. *Id.;* and PageID.8-9.

The parties dispute whether Universal agreed to deliver the pumps within two weeks. See [ECF No. 26, PagedID.291; ECF No. 1, PageID.3]. According to Universal, it never delivered any pumps because Mighty Good agreed to pick up all of the pumps at Universal's Warren, MI warehouse. [ECF No. 26, PageID.291]. Mighty Good alleges that Universal delivered only 845,000 pumps and the pumps were the wrong size, **28-410**, instead of the "28-400" size agreed to by the parties. *Id*. at PageID.3.  The 28-410 pumps were not compatible with the bottles that Mighty Good was using for the hand sanitizer.  To get the pumps to fit securely, Mighty Good was forced to include an extra piece, which created additional costs for Mighty

Good and also delayed the production of the hand sanitizer. *Id.* Mighty Good alleges

that it requested a refund for the pumps that were never delivered, but Universal has

refused to process the refund. *Id.* Universal also failed to arrange to retrieve the

incorrect pumps that it delivered. *Id.* Mighty Good claims it has been damaged by

Universal's breaches and non-performance. *Id.*

Universal filed an Answer to Mighty Good's Complaint on January 17, 2025,

and an amended Answer on May 13, 2025. [ECF Nos. 21 and 23]. Universal's

amended Answer includes a five-count counterclaim against Mighty Good.

Universal's claims include: Count I – Breach of Contract; Count II – Breach of the

Implied Duty of Good Faith and Fair Dealing; Count III – Fraud Fraudulent

Inducement, and Misrepresentations; Count IV – Promissory Estoppel; and Count V

- Non-Acceptance of Conforming Goods Under the Uniform Commercial Code.

[ECF No. 26].

Mighty Good seeks to dismiss Universal's counter complaint arguing that

Universal failed to satisfy the requisite pleading standards under the Federal Rules

of Civil Procedure or seeks relief through improper causes of action or is barred by

the applicable statute of limitations.

### III.   LAW AND ANALYSIS

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).  The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### A. Count III - Fraud

Count III of the counterclaim alleges fraud. FRCP 9b states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." "A plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D.Ohio 1998). "At a minimum, a plaintiff must allege the time, place, and contents of the misrepresentations upon which he or she relied." *Id.* "General allegations" that raise the mere possibility of fraud will not do; instead, the complaint must provide the factual predicates necessary to convince us that [the underlying fraud] in all likelihood occurred." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024) (internal quotation marks omitted) quoting *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 882 (6th Cir. 2017).

Universal's fraud allegations are nothing more than a generalized recitation of the elements of fraud. Universal merely states that Mighty Good made representations regarding "various aspects of the Purchase Orders" and that Mighty Good "knew or believed that the representations were false." [ECF No. 26, PageID.303]. Further, that the representations were material and made for the purpose of inducing Universal and that Universal reasonably relied on the representations and suffered damages. *Id*. With nothing more, Universal's fraud claim is glaringly deficient. Despite Universal's argument that it provided "specific

false representations made by [Mighty Good] regarding the purchase orders," there is simply nothing particular about the allegations. Mighty Good's motion to dismiss is granted as to Count III.

## B. Count IV – Promissory Estoppel

Count IV alleges promissory estoppel. Universal alleges that Mighty Good made one or more promises to Universal that it would purchase the pumps at the agreed price. [ECF No. 26, PageID.303]. Universal further alleges that "[a]t the time [Mighty Good] made these promises, [Mighty Good] knew that Universal would rely on the promises made, take certain actions, and incur certain expenses in order to ensure that the pumps were delivered in a timely manner, with the expectation that [Mighty Good] would pay for the pumps as promised." *Id*. at PageID.303-4. Universal argued for the first time in its response brief, and again at oral argument, that its promissory estoppel claim is not related to Mighty Good's promise to pay for the pumps but its promise to pick up the pumps from Universal's warehouse. [ECF No. 29, PageID.345]. As a result, Universal argues that this claim is viable because promissory estoppel "may apply where the terms of an agreement are disputed or incomplete." *Id*.

In dismissing Mighty Good's unjust enrichment claim, the Court previously ruled that "[t]here is no indication that the parties disagree as to whether the purchase orders reflect the written agreements between the parties related to the litigation

presently before the Court." [ECF No. 20, PageID.14-15]. It appears that Universal wishes to use promissory estoppel to fill gaps in the agreements. Nevertheless, "[w]here the parties have an enforceable contract [ ] and merely dispute its terms, scope or effect, one party cannot obtain recovery based upon promissory estoppel." *Gonzalez Production Systems, Inc. v. Martinrea Intern. Inc.*, 2015 WL 136169 (E.D. Mich. 2015). Further, a motion to dismiss contemplates whether the *complaint* is sufficient to put the opposing party on notice of the claims against him. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Universal's counter complaint alleges that Mighty Good agreed to pay for the pumps and failed to do so, causing harm to Universal. The Court has determined that the parties' agreement on price is governed by the purchase orders. Universal has not sufficiently pled a claim under the theory of promissory estoppel. Therefore, Mighty Good's motion to dismiss is granted as to count IV.

### C. Count II – Breach of the Implied Duty of Good Faith and Fair Dealing

Mighty Good argues that Count II must be dismissed because Michigan law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. [ECF No. 27, PageID.316]. However, "[a]n implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citing

*Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law)). "Discretion arises when the parties have agreed to defer decision on a particular term of the contract." *Id*. at 826.

Universal fails to address either in its counter complaint or its response to Mighty Good's motion to dismiss, what unilateral discretion Mighty Good enjoyed to Universal's detriment. Instead, Universal alleges that Mighty Good "engaged, and continues to engage, in arbitrary or unreasonable conduct that had or has the effect of preventing Universal from receiving the intended fruits of the Contracts." [ECF No. 26, PageID.302]. This bare allegation is not sufficient to plead a recognizable claim of breach of the implied duty of good faith and fair dealing under Michigan law. Count II is dismissed.

### D. Counts I and V – Breach of Contract

Universal alleges both common law breach of contract and breach of contract under the UCC. Universal alleges that the parties had agreements, that Mighty Good failed to perform under the agreements, and that Universal has suffered damages as a result of the breach.

Mighty Good argues that Universal did not state what the agreements were or the terms of the agreement. [ECF No. 27, PageID.315]. That is not exactly accurate. Universal alleges that "the parties had a written agreement(s) between the parties that identified what [Mighty Good] was purchasing from Defendant Universal."

[ECF No. 26, PageID.300]. As the Court noted in its January 2, Order, and Mighty

Good noted in its briefing, the purchase orders attached to Mighty Good's Complaint

and Universal's motion to dismiss [ECF No. 8] "[t]here is no indication that the

parties disagree as to whether the purchase orders reflect the written agreements

between the parties related to the litigation presently before the Court." [ECF No.

20, PageID.14-5]. It is reasonable to conclude that Universal is referring to the

purchase orders between the parties as the subject agreement(s). Those purchase

orders contemplate the sale of goods (the pumps) and therefore, the agreements are

governed by the UCC. Therefore, Universal's common law breach claim is

dismissed and the Court turns its focus to the UCC.[1]

The parties agree that the UCC proscribes a four-year statute of limitations on

contract disputes which accrues when the breach occurs, regardless of the aggrieved

party's knowledge. MCL 440.2725; ECF No. 29, PageID.346-7; ECF No. 27,

PageID.320. However, Universal argues that it is exempt from the statute of

limitations because it filed a motion to dismiss in lieu of an answer and "the Court

took its time in deciding the Motion to Dismiss. [ECF No. 29, PageID.347].

Universal further argues that such delay "does not bar a Counter Claim that could or

---

[1] Mighty Good's argument that Universal failed to attach the agreement(s) is equally unavailing. The purchase orders are already a part of the record and Universal's failure to attach the purchase orders to the counter complaint is not fatal. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

would have been filed during this period but was not as a result of the parties awaiting the Court's Opinion and Order on the pending dispositive Motion." *Id*. at PageID.347-8. Universal is misled.

Universal misconstrues the ruling in *Tyler v. DH Capital Mgt.*, 736 F3d 455, 459 (CA 6, 2013). Universal argues that *Tyler* holds that its UCC breach of contract claim is not barred because it did not have an opportunity to lodge its counter complaint until the disposition of its motion to dismiss. [ECF No. 29, PageID.348]. Universal further asserts that FRCP 13(a) only requires a compulsory counterclaim if the party who desires to assert a claim has served a pleading. *Id*. But FRCP 13(a) does not toll the statute of limitations and Universal cites neither case nor statute to the contrary.

It is not the fault of the Court that Universal waited to raise its claim for breach of contract more than four years after the breach occurred. Universal admits in its amended answer that Mighty Good has not paid Universal since August of 2020. [ECF No. 26, PageID.291]. Further, Mighty Good failed to retrieve 337,000 paid for pumps on August 12, 2020. *Id*. at PageID.298. Universal cannot blame the Court for its failure to take action on its own behalf. The Court finds that Universal's UCC breach of contract claim is time-barred.

## IV.   ORDER/CONCLUSION

In light of the foregoing,

IT IS ORDERED that Plaintiff/Counter-Defendant's Motion to Dismiss Defendant/Counter-Plaintiff's First Amended Counterclaim [ECF No. 27] is GRANTED;

IT IS FURTHER ORDERED that Defendant/Counter-Plaintiff's First Amended Counterclaim [ECF No. 26] is DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that the parties shall proceed in accordance with the Scheduling Order issued February 27, 2025, until further Order of the Court.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 7, 2025